(No. 21882.—

LOUISE M. AUGUSTUS, Appellant, *vs.* GUSTAF E. LYDIG, Appellee.

*Opinion filed June 16, 1933—Rehearing denied October 10, 1933.*

JOSEPH J. AUGUSTUS, for appellant.

John T. Richards, and Irving B. Campbell, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

This action in the superior court of Cook county was ejectment brought by Louise M. Augustus to recover the possession of lot 3 in block 8 in L. A. Ostrom's re-subdivision, in section 36, township 38 north, range 14 east of the third principal meridian. The defense was the twenty-year Statute of Limitations. The court directed the jury to find the defendant not guilty, and upon the verdict a judgment was entered, from which the plaintiff has appealed.

The defendant, Gustaf E. Lydig, was a tenant of John K. Thompson and had no interest in the premises except as such tenant. On the trial the plaintiff proved title from the United States by a series of conveyances which vested the title in fee in the plaintiff. It was agreed that the lot in controversy was one of five lots at the southwest corner of Eighty-second street and Jeffery avenue, in the city of Chicago, all fronting on Jeffery avenue, which runs north and south. Each of the five lots is 25 feet wide and extends back 125 feet to an alley. The lots are numbered from 1 to 5 in regular succession, No. 1 being the north lot, the others following in regular numerical order. John K. Thompson, who was the only witness in the case, testified that he had been familiar with the property since 1891. He is fifty-one years old. His father, John K. Thompson, built a house on lots 1 and 2 in the summer of 1891. There was no fence around the property at the time. In the spring of 1892 a fence was built around the property. There was a picket fence on Jeffery avenue, running north and south, a picket fence along Eighty-second street about one-half the depth of the property, and the balance of the property was inclosed in a post-and-wire fence. The property was inclosed for 125 feet on Jeffery avenue, 125 feet on Eighty-second street, the same on the alley and the same on the

south line of lot 5. Along the alley where there were no sheds it was fenced. The house was not on lot 3 but it was north of lot 3, the north line of lot 3 being approximately four or five feet south of the house and the south line of lot 3 was 31 feet south of the house. He and his father built the fence. The house is approximately 40 feet wide and is set back from the line a few feet. The entrance is on Jeffery avenue. The house at that time was about 15 feet back of the building line, but after Jeffery avenue was widened and a piece taken off the front the house was fairly close to the sidewalk. It was about five feet back of the north line of Eighty-second street. It occupied 40 feet, parts of lots 1 and 2. Lots 3, 4 and 5 were vacant, aside from their being cultivated. There were a number of sheds in the rear—a chicken house and coal sheds—and trees. In 1891 the land was almost prairie land. There were no trees when the Thompsons moved there. They planted all the trees on the property which are there now, probably five or six trees on lot 3. They did not make any distinction at all between the lots, the lot lines or property lines but just planted the trees, and there happened to be five or six trees directly on lot 3. The trees were located irregularly on the lot. About the center of the lot they built a grape arbor and around that a flower garden. They raised grapes. Commencing at the north end of the lot was a coal shed. That was located on lot 1 and has since been torn down and a garage built in its stead. The next building was a wood-shed on lot 2. The next building was approximately on the line of lots 2 and 3. There was a chicken yard partly on lot 3. South of that another shed, built there for miscellaneous uses, partly on lots 3 and 4. There was a garden on the back half of lots 4 and 5 and part of lot 3. The condition described was the condition existing in 1892 and exists at the present time. The Thompsons do not reside on the property. The father and mother of the witness are

both dead and the owner of the property is the estate, of which the witness is administrator. It was left by will to his mother, and she is dead. The witness testified that her heirs-at-law were himself, his brother and two sisters; that the condition with reference to the five lots remained the same up to the present time, except that he does not know whether the present occupant is keeping a garden. There has been no break in the occupancy. His mother lived on the premises until the fall of 1924. After the fall of 1924 they were occupied by Lydig, who still is in possession and was in possession at the time of the institution of the suit. He pays rent to the witness when he has it. The witness resided on the premises until 1905. After he ceased residing there he had seen the property often, and from the time he moved on the premises until the present time no change has been made. From the time his father built the house up to the time his mother died, and up to the present time, nobody except the present tenant occupied any portion of the five lots. On cross-examination the witness testified that he was quite sure his father owned lots 1 and 2. The fence was from the north line of lot 1 to the south line of lot 5, along Eighty-second street to the alley, from the alley to the corner, and to Jeffery avenue. There was no difference in the fence between lots 1, 2, 4 and 5—it was one continuous fence. The trees were at various distances from the house. There was a garden on lots 4 and 5 and a chicken house in the rear of lot 4. There was no house on lot 5— just a chicken-run yard but no chicken house. The witness could not state exactly when his father first acquired title to lots 1 and 2. There was no fence prior to the time the house was built. There was no fence on the north or south line surrounding lot 3. There were no garden and no shrubs on the front of lot 3—just lawn space—and the sheds on lot 3 probably extended 8, 10 or 12 feet. The witness could not state what was the last time the fence was repaired, but stated the tenant had orders to repair the

fence whenever necessary. He had his orders to keep the place in repair. The witness left the premises somewhere in 1908 or 1907. For short periods of time he stayed with his mother—maybe a month or two at a time. He left home in 1907.

The defendant then offered in evidence three certified copies of deeds: (1) A deed dated February 26, 1895, from Hogberg to John K. Thompson, conveying lots 3, 4, 5 and 6 in block 8, in the same subdivision described in the plaintiff's declaration, recorded on February 27, 1895; (2) a deed dated January 15, 1897, from William W. Marcy to John K. Thompson for lots 3, 4, 5 and 6 in the subdivision described in the plaintiff's declaration, which was recorded in the recorder's office on February 1, 1897; (3) the same deed from Marcy to Thompson, conveying lots 3, 4, · 5 and 6, which was again filed for record and was recorded in the recorder's office on April 17, 1897, correcting an apparent omission in the first recording of the number of the block. The plaintiff in rebuttal offered in evidence exhibits showing the payment of general taxes on lot 3 for the period from 1893 to 1915, the taxes from 1893 being paid by T. M. Morrison and the taxes for 1894 to 1914, inclusive, by R. C. Morrison.

The appellant contends that the defendant's evidence was insufficient to establish his defense of adverse possession, and that the court erred in directing the jury to return a verdict for the defendant and in the admission and exclusion of evidence. The defendant's contentions are, that the evidence shows that those under whom the defendant claims the right of possession have acquired title to lot 3 by adverse possession; that the plaintiff offered no evidence fairly tending to disprove the open, exclusive, continuous and adverse possession by the defendant and his privies of lot 3 for more than twenty years, and that no error was committed in the admission or exclusion of evidence.

The rules of law which govern the Statute of Limitations in cases of this character are well established. Where the plaintiff in an action of ejectment has proved a connected title from the United States, the presumption must prevail in favor of the validity of that title and in favor of the subserviency of the possession to that title until overcome by evidence to the contrary. The burden of producing that evidence is on the defendant. The presumption of the law is that the possession of real estate is subservient to the rights of the owner of the record title, and where possession has been acquired in subserviency to the owner of the fee, a clear assertion of an adverse right brought to the knowledge of the owner must be shown before any foundation can be laid for the operation of the statute. The settled law announced in *Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430, and many other decisions both before and since, is: "The adverse possession which is required to constitute a bar to the assertion of a legal title by the owner of it must include these five elements: It must be (1) hostile or adverse, (2) actual, (3) visible, notorious and exclusive, (4) continuous, and (5) under a claim or color of title." The appellant contends that two of these elements, at least, have not been made out by the appellee; that the possession is not shown to have been hostile or adverse and not shown to have been under a claim or color of title. There can be no question about the actual, visible, notorious, exclusive and continuous possession of those under whom the appellee claims the right of possession for more than the period of time required by the statute to bar the action. There is no contradiction in any particular of the truth of the testimony of the only witness who testified.

The appellant argues that the circumstances indicate a merely permissive possession, without claim of title, and therefore was not adverse. The testimony is uncontradicted and has no tendency to support such a conclusion. The testimony is that John K. Thompson, the father, was

the owner of the north two lots of the five when he built the house in 1891 on lots 1 and 2 and when he inclosed the five lots with a fence in 1892; while the plaintiff offered in evidence a deed from John K. Thompson dated May 9, 1881, and recorded on May 10, which conveyed lots 1 and 2 to Paulina Thompson, his wife. The plaintiff, therefore, claims that Paulina Thompson, and not John K. Thompson, was the owner of lots 1 and 2 when the fence was built in 1892 inclosing lot 3 as well as lots 4 and 5 with lots 1 and 2; that the including of lot 3 within the outside fence around the whole five lots and using the whole block of five lots together as one tract in the manner described in the evidence was not a taking of actual possession of lot 3, because there were no fences on the north or the south boundary of lot 3, and *Ely* v. *Brown,* 183 Ill. 575, is cited to support the proposition that an inclosure on three sides by a wrongdoer, under the circumstances shown, was insufficient to constitute an adverse possession against the real owner. The continued occupation of land for twenty years with acts of ownership during that period constitutes a bar to recovery by the former owner. Where there has been an actual, visible and exclusive possession for twenty years it is not essential to the bar of the Statute of Limitations that there should have been any muniment of title or any oral declaration of claim of title, but it is sufficient if the proof shows that the party in possession has acted so as to clearly indicate that he did claim title. "No mere words could more satisfactorily assert that the defendant claimed title than its continued exercise of acts of ownership over the property for a period of more than twenty years does. Using and controlling property as owner is the ordinary mode of asserting claim of title, and, indeed, is the only proof of which a claim of title to a very large proportion of property is susceptible." (*James* v. *Indianapolis and St. Louis Railroad Co.* 91 Ill. 554; *Faloon* v. *Simshauser,* 130 id. 649; *Shaw* v. *Smithes,* 167 id. 269; *Illinois Cen-*

*tral Railroad Co.* v. *Houghton,* 126 id. 233; *Lyons* v. *Stroud,* 257 id. 350.) If the owner permits the occupation of his land for a period of twenty years by a party asserting ownership he is barred by the statute from making an entry or bringing an action to regain possession. It is the possession that bars the owner of a recovery. No deed is requisite to the inception, the continuance or the completion of the bar. (*Weber* v. *Anderson,* 73 Ill. 439.) It is not necessary that land should be inclosed by a fence or that a house should be erected on it to constitute possession, or that it should be reduced to cultivation. Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. *Bugner* v. *Chicago Title and Trust Co.* 280 Ill. 620; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Nugent,* 152 id. 119; *Kinder* v. *LaSalle County Coal Co.* 310 id. 126; *Davis* v. *Haines,* 349 id. 622.

An objection was sustained to the offer in evidence of the deed of May 9, 1881, from John K. Thompson to Paulina Thompson, and the appellant argues that this was error. The argument is that this deed conveyed the title to lots 1 and 2 to Mrs. Thompson, and that when John K. Thompson, who with his wife was residing on lots 1 and 2 as their homestead, took possession of lots 3, 4 and 5 by inclosing them within the fence which he built around the five lots, cultivating and improving them, his possession inured to his wife, the owner of the adjoining lot. The process of reasoning by which this conclusion is reached is this: The possession of John K. Thompson could not be adverse to that of his wife; that since he did not own lots 1 and 2 he did not have any inclosure on the north side of lot 3, and his inclosure of the five lots in the manner they were inclosed was insufficient to constitute a possession adverse to the real owner. There is no question in regard to adverse possession between husband and wife. If she had the

title to lots 1 and 2 the possession of those two lots was hers, and to the extent of the estate of homestead the two were in joint possession. But this title gave neither of them any right, possessory or other, over the adjoining lot 3, and did not limit the right of either to acquire the title or the possession of that lot. No inclosure of any kind by a fence or in any other way was necessary to the actual possession of the lot. A fence is merely evidence of the fact of occupancy. It is the actual occupancy that creates the bar of the Statute, of Limitations. The facts that Thompson was living on lots 1 and 2 and that they were owned by his wife did not tend to show that he was under any disability to take possession of the adjoining lot and to acquire title to it by purchase or under the Statute of Limitations. The deed offered in evidence had no tendency to prove any fact relevant to the issue, and the objection to it was therefore properly sustained.

The appellant also objected to the admission of the three certified copies of deeds for lots 3, 4, 5 and 6 to John K. Thompson because no sufficient foundation was laid for their admission. It is not material whether they were properly received or not. The appellee's case was complete without them.

It is assigned as error that the court excluded certificates of the county clerk showing payment of taxes on the lot in controversy from 1893 to 1914, inclusive. The certificates are that the taxes for 1893 were paid by T. M. Morrison and the taxes for 1894 to 1914, inclusive, by R. C. Morrison. Theresa M. Morrison was the grantor of the appellant in the deed by which she acquired title, dated September 17, 1928. R. C. Morrison is not shown to have any connection with the title, and the payment or non-payment of taxes had no tendency to overcome the appellee's defense of the Statute of Limitations.

The instruction to find the appellee not guilty was properly given, and the judgment is affirmed.

*Judgment affirmed.*