(No. 31331.—

FRANK H. SCALES, Appellant, *vs.* EDNA MAE MITCHELL, Appellee.

*Opinion filed May 18, 1950.*

George C. Adams, of Chicago, for appellant.

Wolfberg & Kroll, (C. A. Caplow, of counsel,) both of Chicago, for appellee.

Mr. Justice Gunn delivered the opinion of the court:

Frank H. Scales, appellant, filed his complaint in the superior court of Cook County to quiet the title to certain described premises located at No. 9216 S. Lafayette Avenue, in Chicago, making appellee, Edna Mae Mitchell, the only defendant thereto. The defendant filed an answer, denying all of the allegations of the complaint, and later filed a counterclaim in ejectment. The quiet-title issue was referred to a master in chancery. The court, upon the coming in of the master's report in favor of defendant, dismissed the complaint for want of equity, and entered a judgment of ejectment on the counterclaim in favor of appellee. A freehold is involved, and the appeal comes directly to this court.

A review of the pleadings and evidence is necessary to a correct decision of the case. The complaint charges that plaintiff became the owner of, and entered into possession of, the premises in question in April, 1925, and that he has

been in the actual, exclusive, and adverse possession of said premises continuously from then until the filing of the suit in August, 1945, a period of over twenty years. The complaint also alleges, although not material to the twenty years' adverse possession, that he has paid all of the taxes, which have never been repaid to him by the defendant, and that he has also spent large sums of money for repairs, fixtures and valuable improvements to the said premises. The reason for the naming of the defendant appears from the fact she was the apparent holder of the record title.

The complaint alleges that the premises were purchased by the plaintiff from one William G. Cobb for the sum of $800, and fully paid for, and that both Cobb and his wife are deceased, and the defendant is their daughter, and that she claims title by reason of being an heir. The defendant answered, denying all of the allegations in the complaint, and denies that the possession was hostile, and claims that plaintiff was permitted to remain on the premises with the consent of her father. Some three years after the case was filed, the counterclaim in ejectment was started, and plaintiff was ruled to answer within fifteen days, and prepared a plea of the Statute of Limitations, but was two days late in filing same, whereupon the court refused to allow the plea to be filed.

The evidence, practically without contradiction, establishes the following: In the late part of 1924, the then owner of the lot, William G. Cobb, sold the same to the plaintiff for $200 cash, and the balance in installments of $25 each, until the full amount of $800, together with interest, was paid, and at the request of plaintiff a deed to the premises was prepared, by a real-estate man by the name of Williams, to one William Adams as grantee, and both Williams and Scales claim that the next day a quitclaim deed was executed by Adams to Scales, but was left in the possession of Adams for a number of years, and then delivered to Scales. The reason the title was handled

in this manner was that at that time Scales was having domestic difficulties with his then wife, and did not wish to place the deeds of record immediately, and when he did take possession the deeds were lost and never recorded.

The evidence is clear beyond dispute that Scales entered upon the premises and began to make improvements. He started out by making a basement, for which purpose it was necessary for him to obtain a building permit, which was issued by the proper department of the city of Chicago. Adams, who was a plumbing contractor, furnished the plumbing and sewer work on the premises. Later a dwelling house or small apartment building was erected thereon. Bills for material, shown by the evidence to be charged to these particular premises, were paid by the plaintiff. The daughter of William Adams, who kept his books for many years, testified she saw the two deeds in the safe of Adams for a number of years. Williams, the real-estate man, is certain of it, and so is Scales. Adams thinks there was only one deed made, and that he kept it only for security, and testified that later, some seven or eight years after the transaction, he delivered that to Scales. Adams never claimed any title to the property other than security for his debt. All of the witnesses agree that Cobb conveyed the property to Adams, and, under the circumstances, Adams was, at least, a trustee for Scales, if the deed was not directly operative under the Statute of Uses. There was no evidence offered on behalf of the defendant, except that she was the daughter and only heir of Cobb, and she admits that no demand of any kind was ever made of Scales for possession of the property.

Upon these facts the master found that the proof of the conveyance was insufficient; that the plaintiff went into the possession of the real estate sometime in the year 1925, and began the erection of a small house thereon, which was subsequently, at least a part of the time, occupied by the plaintiff, and a part of the time rented by him to a

tenant. However, the master finds there is not sufficient evidence that plaintiff's possession was adverse to the holder of the record title, because his possession was not based upon color of title. The master completely overlooked the fact that, although plaintiff may not have shown a technically perfect paper title, the evidence fully shows he believed he owned the property, and entered upon it as owner, and continued as such for more than twenty years. The master then makes this singular statement of law, *viz.*, "In Conclusion a principle recognized in all of the law cases, is that unless a party shows title to land in himself it is not for him to complain that there is a cloud upon it. He must have a title, either legal or equitable, to the land to give him a standing in Court before he can contest a cloud upon the title, whether it is created by an encumbrance or an adverse title. Having failed to prove title in himself, the plaintiff has no standing in Court to have such title quieted." If this language is given its full effect, title acquired by twenty years' adverse possession has limitations not hitherto known.

The law of adverse possession has been settled by a score of decisions. The possession must be actual, visible and exclusive. That the plaintiff established these facts in the instant case is undisputed. The *possession* must be acquired and retained under some claim of title inconsistent with the title of the owner of record. This is shown by three witnesses who testified that William G. Cobb made a deed and delivered the same to Adams. The daughter of Adams also testified that she saw the deeds. Neither the defendant, nor any other witness denies this, so Cobb, having delivered a deed, was no longer the owner from the date thereof, in 1925. The fact that the deeds were lost does not revest the title in Cobb, and the relationship between Scales and Adams, as to the holding of the title, is a matter of no concern whatsoever to Cobb, or his heirs, since in ejectment the plaintiff can only prevail from the

strength of his own title, and not from the weakness of that of his adversary. The facts that the deeds were executed and possession taken of the property show beyond question that Scales entered upon the premises with intent of exercising ownership. (*Augustus* v. *Lydig,* 353 Ill. 215.) He did exercise such ownership; he paid all of the taxes; he erected valuable improvements; he lived in the property, or rented same; and he did every other thing that an owner does; and both Cobb, and Cobb's heir, stood by for twenty-three years and did nothing, until a master, under a misconception of the law, held the possession of Scales was insufficient to establish the possession was adverse to appellee.

The master further found that the possession was not adverse because the payment of taxes was not continuous. The evidence shows that Scales paid all of the taxes, although not regularly every year, having had to make some redemptions from forfeitures, but his title is not based upon the seven-years' Statute of Limitations, which requires seven successive years of payment of taxes and color of title, but is based upon the twenty-years' Statute of Limitations, which may ripen into title without the payment of taxes at all. In *Leonard* v. *Leonard,* 369 Ill. 572, we stated: "No mere words could assert title more satisfactorily than a continued exercise of ownership over the lands for a period of more than twenty years. Using and controlling property as an owner is the ordinary mode of asserting a claim of title and it is the only way a claim of title could be proved to a very large proportion of property. [Citations.]" Where title is based upon twenty years' adverse possession it is not necessary to prove seven years' possession under color of title with the regular payment of taxes. *Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233; *Leonard* v. *Leonard,* 369 Ill. 572.

Again referring to the statement of the master, upon which he apparently based his conclusion, we have spe-

cifically held that titles may be quieted, and clouds removed from the titles to lands acquired by adverse possession. In the *Leonard case* we said: "Title may be quieted and clouds may be removed from the title to land acquired by adverse possession. Such an owner may successfully use title acquired by adverse possession in an offensive action. Such a title may be asserted against all the world, including the owner of record." *Harms* v. *Kransz,* 167 Ill. 421; *Walker* v. *Converse,* 148 Ill. 622.

It seems to have been overlooked in this case that the title of the plaintiff became vested by his twenty years' adverse possession. The deeds referred to, even though the master was not satisfied as to their execution and authenticity, were not necessary to plaintiff's title. It was the taking possession, with the intention of becoming the owner, and making improvements, and continuing to claim the property against the whole world, and living on it for a period fixed by the statute, which gave him his title, and which then authorized him, as owner, to go into a court of equity to remove anything which appeared as a cloud upon his title.

In *Augustus* v. *Lydig,* 353 Ill. 215, we said: "If the owner permits the occupation of his land for a period of twenty years by a party asserting ownership he is barred by the statute from making an entry or bringing an action to regain possession. It is the possession that bars the owner of a recovery. No deed is requisite to the inception, the continuance or the completion of the bar. (*Weber* v. *Anderson,* 73 Ill. 439.) It is not necessary that land should be inclosed by a fence or that a house should be erected on it to constitute possession, or that it should be reduced to cultivation. Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. [Citations.]"

Ordinarily we give considerable weight to the report of a master in chancery and the decree of a chancellor sustaining it, but when we find the evidence is all one way, is undisputed, and there is no reason to doubt it, and the master's conclusion is based upon an erroneous conception of the law, then we investigate the record and make findings accordingly. Objections were made to the master's report, and exceptions taken, but all were overruled by the court. This is error. The evidence clearly shows that the plaintiff had acquired title under the well-recognized legal principles applying to adverse possession applied under section 1 of the Limitations Act. Ill. Rev. Stat. 1949, chap. 83, par. 1.

We now come to the counterclaim. It was filed after the master overruled objections to the report. It simply alleges that counterplaintiff was the heir of William G. Cobb, who acquired title to the premises in 1915, and that the counterdefendant entered into the premises and unlawfully withholds possession to the damage of the counterplaintiff. On June 9, 1949, the court entered an order that the plaintiff plead to the countercomplaint within fifteen days. On June 27, 1949, the court entered an order that the report of the master was approved. It also ordered: "It is further ordered that the motion of the plaintiff for leave to file his pleading to the countercomplaint of the defendant be—and the same is hereby denied for the failure to file same in accordance with the order heretofore entered herein, June 9, 1949." And thereupon, without entering a default against the plaintiff, entered a decree dismissing the bill for want of equity, and entered judgment, ordering that the counterplaintiff recover the possession of the property from the counterdefendant.

It appears that the court must have believed that, if he so decided against the right of the plaintiff to recover in his quiet-title suit, it followed, as a matter of law, that the counterplaintiff would be entitled to recover in her

ejectment suit, but that was no reason for preventing the plaintiff from invoking the Statute of Limitations against the counterplaintiff before any default or judgment had been entered. This was contrary to well-settled practice. *Crabtree* v. *Green,* 36 Ill. 278; *Pyle* v. *Pyle,* 158 Ill. 289; *Dickerson* v. *Simms,* 128 Ill. App. 18.

Appellee insists that the possession of real estate is presumed to be in subservience to the record ownership, as stated in *Pullman Car and Manufacturing Corp.* v. *Stroh,* 349 Ill. 492, but such presumption yields readily to clear evidence, and the evidence in this case is clear. The contention is also made that the omission to reply to the affirmative allegation of fact in the answer constitutes an admission of such allegation. In fact, it was not an affirmative answer, but merely a denial that the possession of plaintiff was hostile and adverse. The pleading was subject to special demurrer or motion to strike, as amounting to the general issue. Since the question of twenty years' adverse possession had already been put in issue there was no necessity for filing any reply to an answer that merely denied argumentatively that the possession of plaintiff was adverse.

Moreover, the appellee now urges this contention for the first time in this court, and this, of course, has been waived by failure to raise it at an earlier time. The action of the court in refusing counterdefendant the opportunity to file his plea of the Statute of Limitations, and his motion to strike, even if proper pleading, was an abuse of discretion. Before the decree was entered the motion was again presented, and the court endorsed upon it: "This document presented July 20, 1949, and court denies right to file. Frank M. Padden, Judge." We believe this action, under the circumstances, was an abuse of judicial discretion.

The statute on Amendments and Jeofails, (Ill. Rev. Stat. 1949, chap. 7,) which has been in force in this State for over one hundred years, was enacted for the very purpose

of preventing miscarriages of justice and to provide for the amendment of pleadings, and provides such amendments may be made as are just, at any time before judgment is rendered therein. This has been construed on numerous occasions and the holdings have been universally to the effect that the purpose of the amendment statute is to provide liberal means whereby justice may be done in the control of lawsuits, and that this statute has been liberally interpreted; and that such amendments should be allowed in every case where the party seeking the privilege is able to show he has not been guilty of culpable negligence. We do not believe two days' delay is culpable negligence in answering the countercomplaint.

We are of the belief that the court, feeling that the master's report should be approved, and that it would be a useless waste of time to proceed with the ejectment suit, therefore barred the filing of the plea. We have here a singular situation: That the plaintiff is proved the owner by adverse possession; he is entitled to have his title quieted by the decree of the court; the master holds otherwise; immediately an ejectment counterclaim is filed; and because the plea to the counterclaim was not on file by the time fixed by the court, the order approving the master's report is sustained; the leave to file the plea to the counterclaim denied; and final decree entered against the plaintiff and in favor of the defendant. No logical interpretation of the reason for a court of equity to enter such a decree and render such a decision can be given, other than the belief that the master's report was final, and therefore, no defense could exist to the ejectment suit. Since we hold the master's finding and the judge's approval thereof upon the plaintiff's suit was erroneous, and that the plaintiff was entitled to have a decree in his favor, then, of course, the reverse is true—an ejectment should not be allowed, as the counterplaintiff has not now, nor ever had since 1925, any title upon which to base an ejectment suit. Even though

the plaintiff had been defaulted, the court was without authority to enter ejectment until all taxes and costs paid by the plaintiff had been paid by the counterplaintiff. Section 270 of the Revenue Act, (Ill. Rev. Stat. 1949, chap. 120, par. 751,) among other things provides: "that any judgment or decree of court, in law or equity, setting aside any tax deed procured under this Act, or restoring the owner of same to possession, shall provide that the claimant shall pay to the party holding such tax deed the following, to be estimated by the county clerk: All taxes and legal costs, as provided by law, with interest at five per cent per annum, together with subsequent taxes and special assessments paid and the statutory fees and costs incurred." The counterplaintiff was not entitled to judgment in any event until she had complied with this provision of the statute.

Under the well-settled general practice the plaintiff has established his title under the law to the premises in question by adverse possession. He was entitled to have his title quieted against the apparent claim of record of Edna Mae Mitchell, the holder of the record title, and, being entitled to a decree quieting title in him, it necessarily follows that counterclaimant, Edna Mae Mitchell, is not entitled to a judgment in ejectment for possession of the property, and that the court erred in dismissing plaintiff's complaint and entering judgment on the counterclaim of defendant.

It is ordered that the decree and order of the superior court of Cook County be reversed and the cause remanded, with directions to set aside the order and judgment in ejectment in favor of the counterclaimant, Edna Mae Mitchell, and with further directions to enter a decree in favor of the appellant, quieting title to the premises described in the complaint.

*Reversed and remanded, with directions.*