**Agnes H. Schiller, Plaintiff-Appellant, v. Anton V. Kucaba, et al., Defendants-Appellees.**

Gen. No. 49,554.

First District, Second Division.

December 29, 1964.

 █

Raymond H. Groble, Jr., of Chicago, for appellant.

Fred J. Ginsburg, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This is an action for the partition of two vacant parcels of real estate brought by the plaintiff as the nominee of nine persons claiming to be co-tenants to a nine-tenths interest in the lots.

Defendants maintained that they were always the owners of the lots for the reason that they and their ancestor had acquired title to the lots by adverse possession; they also filed a complaint to quiet title to the lots in themselves.

The lots in question are situated at the southeast corner of 49th Avenue and 25th Street in Cicero, Illinois, and are legally described as:

> Lots 33 and 34 in Benjamin F. Stauffer's Addition to Morton Park, said addition being a subdivision of the South Half of the Southeast Quarter of the Northeast Quarter of Section 28, Township 39 North, Range 13 East of the Third Principal Meridian, in Cook County, Illinois, save and except that part of Lot 34 lying Northwesterly of a line drawn from a point on the West line of said Lot 34, 21 feet South of the Northwest corner thereof and extending Northeasterly to the Northeast corner of said Lot 34, condemned for street purposes on a petition of the Department of Public

11

Works and Buildings of the State of Illinois filed October 16, 1958 in the Superior Court of Cook County, Illinois, as Case No. 58 S 16386.

Lots 33 and 34 were purchased in 1907 by Anton Kucaba, Jr., the father of the defendants in this action. Anton, Jr., conveyed the lots to his parents, Anton and Jozefa Kucaba, Sr., in 1911, and they reconveyed them to Anton, Jr., and his wife, Bertha, in 1921. On October 4, 1922 Anton, Jr., and his wife reconveyed the lots to Anton, Sr., and his wife, along with other parcels of realty; this deed was recorded on January 23, 1923 in the Cook County Recorder's Office. It is under this last named deed that plaintiff's grantors claim their interest, since no deed subsequent thereto reconveying the lots back to Anton, Jr., and his wife has been located. All of the realty involved in the October 4, 1922 deed, except Lots 33 and 34, was subsequently conveyed to third parties by Anton, Sr., and his wife; Anton, Jr., notarized the signatures of his parents on some of these subsequent conveyances.

In 1936, Anton, Sr., was declared incompetent and letters of conservatorship issued to Anton, Jr., and his brother, Edward. Their coconservatorship was terminated upon the intestate death of Anton, Sr., in 1939, and they turned over all of the assets of the incompetent's estate to the trust company appointed as administrator of the estate of Anton, Sr., deceased. Lots 33 and 34 were not inventoried as assets of the incompetent's estate nor of the decedent's estate. Anton, Sr., was predeceased by his wife, Jozefa, and left as heirs his children: Anton, Jr., Marie, Josephine, Barbara, Julia, Joseph, Jennie, Cecelia, Edward and Rose. With the exception of the heirs of Anton, Jr., who are the defendants herein, plaintiff has received deeds from all of the heirs of Anton, Sr., or their heirs or legal representatives.

12

Anton, Jr., died intestate in 1948, having been predeceased by his wife, Bertha. He left as heirs his children: Anton V., Marion, Edna, and Edith. Beginning in December of 1931 and through January of 1955, there were five conveyances of Lots 33 and 34, among other realty, involving Anton, Jr., and his four children, all of which deeds were recorded in the Cook County Recorder's Office and all of which conveyances except the final one in 1955 were by warranty deed. The final deed in January of 1955 allegedly resulted in title to Lots 33 and 34 in defendant, Edith Kucaba.

Subsequent to the conveyance of October 4, 1922, Anton, Jr., and his wife, the grantors, remained in possession of Lots 33 and 34, which are located immediately adjacent to the house in which Anton, Jr., and his family lived and which is now occupied by Edith Kucaba as her home. From 1923 through 1931 Anton, Jr., paid the general real estate taxes on the lots, as well as installments and supplemental installments on two special assessments from 1924 through 1931. The names on these various tax bills appeared as "A. Kucaba," "Anton Kucaba," or "Anton Kucaba, Jr.," but all were addressed to the office of Anton, Jr., at 4901 West 25th Street, located directly across the street from his home and Lots 33 and 34. The receipted tax bills included other real estate owned by Anton, Jr., including his home and office realty, and were in his possession at the time of his death, as was the October 4, 1922 deed.

From October 4, 1922, until the death of his wife in 1939, Anton, Jr., and his wife used and maintained Lots 33 and 34. The lots were used variously as a chicken yard, vegetable and flower gardens, and rock and lawn gardens. The fence and hedges surrounding the property were maintained by the Anton, Jr., family. Toward the rear of the lots was a shed which

13

was used as a garage by Anton, Jr., for one of his automobiles, until the shed was torn down in 1924 or 1926. After the death of his wife, and until his death in 1948, Anton, Jr., and his children, the defendants, used and maintained the lots in essentially the same manner as before. The use and maintenance was continued by Edith Kucaba and Anton V. Kucaba after the death of their father, Anton, Jr.

During the lifetimes of Anton, Sr., and his wife, no demand was ever made by them upon Anton, Jr., for possession of the lots. No suit for breach of warranty was ever instituted, nor any legal action entered concerning the bay addition to Anton, Jr.'s home, which bay was constructed in 1921 and which extended some three feet over Lot 33. Anton, Sr., and his wife never maintained, contributed to or supervised the premises, never demanded any rent for their use, nor inquired about or paid any taxes or assessments on the lots. Anton, Sr., and his wife resided one block distant from the lots, and visited in the home of Anton, Jr., and in the garden on the lots, for personal and business purposes. Anton, Sr., and Anton, Jr., also had general real estate and insurance business transactions, and for a time Anton, Jr., was a building contractor and builder.

Since the death of Anton, Sr., in 1939, some of the aunts and uncles of the defendants (plaintiff's grantors or their ancestors) came upon the premises to visit with Anton, Jr., and his wife. They never consulted with Anton, Jr., concerning improvements on the lots, never demanded rent, never instituted legal action for possession, and never inquired about or paid the taxes on the property. Many of these aunts and uncles lived in the immediate vicinity of Lots 33 and 34, some within one block and some on the same block.

14

Caroline Cherwonick was one of the witnesses for the defendants. She was born in 1909 and lived across the alley from defendants and their parents, Anton, Jr., and his wife. She testified that as a child she played with the Kucaba children on Lots 33 and 34; that Lots 33 and 34 and the lot on which the Kucaba, Jr., family home is situated were all treated as a single unit and always fenced as a single unit; that she never saw Anton, Sr., or his wife on the premises, except as visitors; that neither Anton, Sr., nor his wife ever maintained the garden or lawn and that the only one who did attend to such things was the wife of Anton, Jr., and that Edith Kucaba carried on this practice after her mother's death; that she, the witness, never saw the aunts or uncles of defendants maintain the property or repair the fence, nor had they done so to her knowledge; and that the only ones who cared for the lots or maintained the fence were Anton, Jr., his wife and Edith Kucaba.

It was stipulated that if Edward Stepek was called as a witness he would corroborate the testimony of Caroline Cherwonick, and that in addition thereto, he would testify that he was told by Anton, Jr., and his wife that they were the owners of the house and Lots 33 and 34. It was further stipulated that if Mildred Seleny and Earl Zentz were called as witnesses for the defendants, their testimony would be the same as that of Caroline Cherwonick.

In 1956, a special assessment foreclosure proceeding and a general real estate tax foreclosure proceeding were instituted against certain real estate owned by Edith Kucaba; Lots 33 and 34 were also involved. Edith Kucaba and plaintiff's grantors were all named as parties defendant. Plaintiff's grantors were served with notice and summons either personally or by publication, but none of them took any action and were

15

defaulted. It was in connection with these two foreclosure proceedings that Edith Kucaba learned of the claimed interests of plaintiff's grantors when she received the title report from the Chicago Title and Trust Company. She attempted to locate a deed to cure the break in the chain of title, but was unsuccessful. On the advice of her attorney, Edith Kucaba allowed the property to go to sale and thereafter effected a redemption therefrom. She furnished the bid money and also paid the subsequent general real estate taxes from 1947 through 1958.

In 1958, a condemnation proceeding was instituted by the State of Illinois against a portion of Lot 34. Again all of plaintiff's grantors were served with notice and summons either personally or by publication, and this time the only party who filed an appearance was the conservator of the estate of Joseph Kucaba, who had been declared incompetent in 1933. The attorney for the conservator of the estate of Joseph Kucaba, incompetent, attempted to secure deeds from all of the parties involved herein, for the purpose of concentrating title to the lots in one person in order that the lots could be sold and Joseph Kucaba's share paid to his estate. Only defendants refused to give a deed and this partition suit followed.

The cause was referred to a master who found, among other things, that plaintiff's grantors and defendants were tenants in common of Lots 33 and 34, and that there was no adverse possession by defendants and their ancestor as to these lots. The chancellor found that the master had erred in his conclusions; that plaintiff's suit should be dismissed for want of equity; that defendants had acquired title to the lots by adverse possession; that the deed of October 4, 1922 between Anton, Jr., and Anton, Sr., and their respective wives was one for convenience only; and that plaintiff and her grantors were guilty of laches.

16

The chancellor dismissed plaintiff's suit for want of equity and set aside the master's report, and decreed that the deed of 1922 was one for convenience only, that Edith Kucaba was the owner of the lots, and that all claims of plaintiff and her grantors against the lots be cancelled and all conveyances between plaintiff and her grantors be removed as clouds upon the title of Edith Kucaba to the lots.

Plaintiff maintains that the chancellor erred in setting aside the master's report for the reasons that, as between tenants in common, when the procedural requirements of the Partition Act (Ill Rev Stats 1959, c 106, §§ 44, 45, 46, 47, 48 and 71) have been complied with, the relief sought will be granted unless matters pleaded by way of defense or counterclaim are established; that defendant's claim that the deed of October 4, 1922 being one of convenience only was not established by their evidence and further is barred by the Statute of Limitations and the Statute of Frauds; and that defendants failed to prove adverse possession.

It is unnecessary to consider the question of whether the 1922 deed was one of convenience only since defendants' evidence clearly established adverse possession of the lots by them and their ancestor, and since plaintiff is precluded from challenging the title so acquired due to laches on the part of her grantors and their ancestor.

██ ██ While it is true that a grantor who remains in possession of property after a conveyance thereof will be considered a permissive tenant of the grantee, such grantor in possession may nevertheless acquire title to the property by adverse possession if he continues to possess and use the property as his own, openly, notoriously and under claim of title, for a period of twenty years or more. Knight v. Knight, 178 Ill 553, 53 NE 306. Express written or

17

verbal notice of the grantor's claim of ownership to the grantee is unnecessary; the fact that the grantor continues to exercise such dominion and control of the property as is inconsistent with the rights of the grantee is sufficient notice of the grantor's claim of ownership. Knight v. Knight, 178 Ill 553, 53 NE 306. Further, using and controlling the property as an owner is the ordinary way of asserting title thereto. Shaw v. Smithes, 167 Ill 269, 47 NE 523.

■ ■ The chancellor found that the grantors of Lots 33 and 34, Anton, Jr., and his wife, remained in possession of the lots after executing the deed of October 4, 1922, and that they and their children, the defendants, have remained in the actual and open possession of the lots ever since that date. The record clearly substantiates this finding. Anton, Jr., paid the taxes on these lots from 1922 through 1931. He and his wife and children fenced and maintained the property, using it for gardening and other purposes, as confirmed by disinterested witnesses. In 1931, Anton, Jr., and his wife conveyed the property by warranty deed to one of the defendants herein, which act was entirely inconsistent with the legal ownership of Anton, Sr., and his wife; this deed was also recorded with the Cook County Recorder, which gave the legal owner constructive notice of the claim of ownership by Anton, Jr., and his wife in addition to the actual notice given in the form of continued use, possession and maintenance. The subsequent deeds between defendants and Anton, Jr., served as further notice to plaintiff's grantors after the death of their ancestor, since all were recorded. Although Anton, Sr., and, later, his heirs, had notice of all these facts, at no time did any of them attempt to assert any rights which they legally had under the deed of October 4, 1922. Under all the circumstances, defendants have made out a case for adverse possession

for the required number of years. The chancellor did not err in so finding.

 It is immaterial whether the adverse possession period is determined from the date of the 1922 deed or the date of the 1931 deed. Over twenty years had elapsed since either date until plaintiff filed this action for partition, and defendants and their ancestor have continued in such open and notorious possession under claim of title since either date as to establish title in themselves through adverse possession. Nor was this continuous period interrupted due to the incompetency of Anton, Sr., in 1936, or the incompetency of his heir, Joseph Kucaba. Once the period of limitations begins to run on a legal claim, it continues to run without interruption, notwithstanding the fact that a subsequent disability befalls the party entitled to enforce the claim. See Calumet Street Ry. Co. v. Mabie, 66 Ill App 235. Further, the period will continue to run against the heirs of the legal owner of property after his death, notwithstanding the fact that they may be under a disability at the time that the right to bring an action accrues to them, Crowell v. Druley, 19 Ill App 509; and notwithstanding the fact that the property is being held adversely by one heir against his coheirs. Dawson v. Edwards, 189 Ill 60, 59 NE 590.

Plaintiff maintains that a party who is holding possession of property adversely to its legal owner and who attempts a conveyance of title thereto before the statute of limitations has run and thereafter remains in possession of the property, breaks the continuity of the adverse possession. Plaintiff relies on the case of Chicago & A. R. Co. v. Keegan, 185 Ill 70, 56 NE 1088, in support of this position. In the Keegan case, however, the party to whom the attempted conveyance was made failed to take possession of the property after the conveyance, thus breaking the continuity of

19

the adverse possession. In the case at bar, on the other hand, there is uncontradicted and undenied evidence that the Anton, Jr., family, the parties to the conveyances between 1931 and 1955, has been in sole and exclusive possession of the premises from 1922 until the present time.

 Finally, plaintiff is barred from challenging the title of defendants acquired by adverse possession, for the reason that plaintiff's grantors are guilty of laches. Courts of equity aid the diligent and not the indolent. Dempster v. Rosehill Cemetery Co., 206 Ill 261, 271, 68 NE 1070. From October 4, 1922 until the date of his death in 1939, neither Anton, Sr., nor his legal representatives ever took legal action against Anton, Jr., to dispossess him from the premises. No demand was ever made upon him for rent. From the death of Anton, Sr., until the filing of this suit in 1960, plaintiff's grantors took no action whatsoever against defendants or Anton, Jr. Many of the heirs of Anton, Sr., lived in the immediate vicinity of Lots 33 and 34, some on the same block. Many of them came upon the lots to visit after the death of Anton, Sr. Although defendants' aunts and uncles were active in the estate of Anton, Sr., deceased, none of them made any effort to have the lots inventoried in the estate, even though they had notice of their legal rights through the recordation of the October 4, 1922 deed. Edward Kucaba, one of Anton, Sr.'s, heirs, testified that he thought that the lots belonged to Anton, Sr., and his wife, from conversations he heard while still living at home, yet he made no effort to have the lots inventoried in either the estate of Anton, Sr., incompetent, or the estate of Anton, Sr., deceased. Plaintiff's grantors also had notice of three legal actions involving the lots, many of them having been served personally with summons, yet only the conservator of

the estate of Joseph Kucaba, incompetent, filed an appearance and this only in the 1958 suit. Plaintiff and her grantors have delayed this action until everyone connected with the 1922 deed who could have testified to that transaction, had died. We think that the chancellor was right in deciding that they were guilty of laches. The decree is affirmed.

Decree affirmed.

FRIEND and BRYANT, JJ., concur.