HOBART R. JOINER *et al.*, Plaintiffs-Appellees, *v.* ALFRED R. JANSSEN *et al.*, Defendants-Appellants.

Third District   No. 79-42

Opinion filed May 21, 1980.—Rehearing denied July 1, 1980.

Louis E. Olivero, of Peru, for appellants.

John C. Hedrich, of Princeton, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:
This decision determines issues raised in an appeal from a judgment of the circuit court of Bureau County. That judgment affirmed the plaintiffs' claim of title by adverse possession to land for which the defendants have record title. The defendants have prosecuted this appeal. The plaintiffs are Hobart R. and Catherine Joiner; the defendants are Alfred R. and Blanche Janssen.

Lots 205, 206 and 207 of the Stevens Addition to the village of Tiskilwa are adjacent to one another in an easterly progression. Each *is* 66 feet wide, *i.e.*, from east to west, and are bordered on the south by Main Street. Lot 11 of the East Addition to the village of Tiskilwa lies adjacent *to and* immediately north of Lots 206 and 207, Lot 11 being 132 feet wide, again, *i.e.*, from east to west. It is a narrow strip of land off the east side of Lot 206 which provides the substance of this dispute.

In 1924 Edward Lundeen was named as the grantee in a deed to the following real estate:

"Lot number Eleven (11) East Addition of the Village of Tiskilwa, Illinois; also Lot number Two Hundred Six (206) and the east side of Lot number Two Hundred Five (205) and eleven (11) feet off of the West side of Lot number Two Hundred Seven (207) all in 'Stevens Addition' to the Village of Tiskilwa, formerly Windsor."

The interest of Lundeen was later splintered with Henry Eckhoff receiving a deed in 1937 to "Lot number Two Hundred Six (206) except Eleven (11) feet off of the East side; also the East side of Lot number Two Hundred Five (205), all in Stevens Addition to the Village of Tiskilwa," and with James and Pearl Sterling receiving a deed in 1940 to "Lot 11 in East Addition to the Village of Tiskilwa; Also 11 feet off the east side of Lot 206 in Stevens Addition to the Village to Tiskilwa, all in Bureau County, Illinois." In an essentially contemporaneous transaction with the Lundeen/Sterling deed, Elsie Eckhoff, Henry's widow, conveyed 14 feet off the east side of Lot 206 to the Sterlings.

The defendants obtained title to the property owned by the Sterlings with a warranty deed dated February 10, 1945. The plaintiffs purchased the property owned by Elsie Eckhoff by contract on August 26, 1951, and by conveyance of deed on August 20, 1958. In 1978 the defendants acquired title to the 11 feet off the west side of Lot 207 by quitclaim deeds from all of the surviving heirs of the Lundeen estate.

Both the 11 feet off the west side of Lot 207 and the 14 feet off the east side of Lot 206 provided driveways which could have been used by the owners of Lot 11 to gain access to Main Street, but because of Mrs. Eckhoff's health, the Janssens and their predecessors in title, the Sterlings, used the driveway on Lot 207, the most remote from Mrs. Eckhoff's residence on Lots 205 and 206. In a similar gesture of accommodation the Sterlings and then the Janssens permitted the Eckhoffs and then the Joiners to use the driveway on Lot 206. The Joiners now contend that they have always treated the westernmost driveway, the driveway on Lot 206, as their own. Indeed, they claim that their acts of dominion have ripened into a perfected claim of adverse possession. With that position the circuit court apparently agreed. The defendants, the Janssens, believe the circuit court was in error.

We are reminded that to perfect a claim to title by adverse possession, that possession must be:

"(1) hostile or adverse, (2) actual, (3) visible, notorious and exclusive, (4) continuous, and (5) under claim of ownership."

(*Cagle v. Valter* (1960), 20 Ill. 2d 589, 591-92, 179 N.E.2d 593, 594.) Each and every element must be proved to successfully establish title by adverse possession. (*Cagle v. Valter.*) On this appeal the defendants

allege that none of the elements were proved, but we find it unnecessary to consider the quantum of proof as to each of the five elements, as the case law supports the Janssens' legal position with regard to the very first of the enumerated criteria.

In a recent case the appellate court discussed the nature of hostile or adverse possession with regard to a similar factual setting.

> "When plaintiff purchased his farm in 1967, the deed conveying the land to him specifically excluded parcel 7. That specific exclusion put the plaintiff on notice that he was not the record title holder of parcel 7 when he came into possession of his farm and began his use of parcel 7. When an adverse claimant comes into possession of land thinking that he is not the record title holder, such possession lacks the requisite hostility for obtaining title by adverse possession. [Citation.]" *Hansen v. National Bank* (1978), 59 Ill. App. 3d 877, 879, 376 N.E.2d 365, 367.

We believe the factual pattern of the instant case is substantially indistinguishable from the facts of *Hansen*. The Joiners purchased their residence by a deed that specifically excluded 14 feet off the east side of Lot 206. Following the holding in *Hansen*, this specific exclusion put the Joiners on notice that they were not the record title holders to the excluded strip of land. It follows, again from the *Hansen* precedent, that when the Joiners came into possession of land thinking they were not the record title holders, their possession lacked the requisite hostility for obtaining title by adverse possession.

There is no dispute as to the exclusion of the 14-foot strip from the plaintiffs' deed. Indeed, both of the plaintiffs, in testimony before the trial court, conceded that they had read the 1951 contract to purchase before signing it and that they signed the document knowing that it contained the express exclusion of the subject 14 feet. Further, Mrs. Joiner's testimony establishes that she knew at the time of recording that the 1958 deed specifically excluded 14 feet off the east side of Lot 206. Clearly the Joiners came into possession of the controverted land thinking that they were not the record title holders.

■■ Upon the authority of *Hansen v. National Bank*, we feel bound to reverse the decision of the circuit court in the instant case and to remand the matter to the circuit court for entry of judgment for the defendants on their counterclaim to clear the cloud on their title. It is incumbent on all courts to be mindful of "the principles and rules established by prior authority for the guidance of men in their relations with each other. Otherwise judges become no more than arbitrators rendering fireside equity." (*Illinois Central R.R. Co. v. Michigan Central R.R. Co.* (1958), 18 Ill. App. 2d 462, 485, 152 N.E.2d 627, 638.) Certainly stability and predictability are the products of our courts' adherence to the

fundamental common-law principle of *stare decisis*. In respect for this sound and fundamental principle of our legal system, grounded so firmly in well-reasoned goals of our public policy, we shall accord substantial precedential weight to *Hansen* despite our uneasiness with some of the logic. See generally 28 DePaul L. Rev. 571 (1979).

■■ We understand that one claiming title by adverse possession must prove that his possession has been "hostile or adverse." (*Cagle v. Valter.*) Hostility of possession requires an intent to claim the fee as against the true owner and all others. (*Hunsley v. Valter* (1958), 12 Ill. 2d 608, 147 N.E.2d 356; *Kinder v. La Salle County Carbon Coal Co.* (1922), 301 Ill. 362, 133 N.E. 772.) One's claim to the fee is demonstrated by using and controlling the land as an owner. (*Scales v. Mitchell* (1950), 406 Ill. 130, 92 N.E.2d 665; *Schiller v. Kucaba* (1964), 55 Ill. App. 2d 9, 203 N.E.2d 710.) If hostile possession requires use and control of land which the possessor intends to exercise even against the record title holder, then we conclude that the logic employed to reach the holding in *Hansen* is somewhat strained. The *Hansen* plaintiff used and controlled parcel 7 knowing he did not have record title.

Finally, although we do feel bound by the *Hansen* decision, it is well settled that a higher court would not be so fettered. *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 299, 175 N.E.2d 785.

Reversed and remanded with directions.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE ALLOY, dissenting:

I respectfully dissent from the majority opinion in this case. The opinion is predicated on the proposition that this Third District Appellate Court is "bound" to reverse by virtue of a previous decision in the case of *Hansen v. National Bank* (1978), 59 Ill. App. 3d 877, 879, 376 N.E.2d 365, 367. The *Hansen* opinion was rendered in the Second District Appellate Court. The opinion in the instant case states that under the doctrine of *stare decisis* our court is "bound" to follow the *Hansen* case in the instant case.

The conclusion, so expressed, is contrary to what has been the established law governing decisions of the appellate court, to the effect that an appellate court is not bound to follow the decisions of the appellate courts of other districts in this State. (*Occhino v. Illinois Liquor Control Com.* (1975), 28 Ill. App. 3d 967, 971-72, 329 N.E.2d 353, 357.) We are, however, required to follow the decisions of the Illinois Supreme Court and the United States Supreme Court. As has been noted, our

position on the appellate level is similar to that of the Federal Circuit Courts of Appeal. In those Federal Circuit Courts of Appeal, the decision of one Federal Circuit Court of Appeal is not binding in a different Federal Circuit Court of Appeal. *Securities & Exchange Com. v. Shapiro* (2d Cir. 1974), 494 F.2d 1301.

The appellate courts of this State have, historically, vigorously chartered courses for modification or improvement in the equitable principles applicable in cases without being limited by any previous opinion which may have been rendered in another district. The Illinois Supreme Court, as a result of this initiative and progressive analysis by the appellate courts of this State, has taken such decisions, where notably in conflict as between the respective districts, and has charted the course which the supreme court has determined was most effective in attaining the ends of justice, as to the parties in the case and, also, as a precedent which is most likely to achieve the objectives of the court in attaining a result which reflects an intelligent and equitable analysis, rather than a rigid acquiescence in a rule, once espoused, but now deemed to be unacceptable.

While we recognize the value of *stare decisis* in determining the question of predictability, a more persuasive approach to the issue posed is the need to remove the dead hand of *stare decisis* so that the course of law may move into new horizons where proper. The experience of the appellate courts in fermenting progressive decisions has been such that as the appellate courts disagree, they have aided the supreme court in establishing new rules which are more equitable and consistent with conditions today than when the old rules were adopted many years previously.

The requirement that any appellate court opinion must be slavishly adhered to by the other appellate courts, until it is modified or reversed by the Illinois Supreme Court, dilutes and limits the value of appellate court review and aid to the supreme court. We must also recognize that the genesis of some of the opinions, which come out of respective appellate court districts, may simply amount to a preliminary analysis based wholly on inadequate briefs filed by the parties in the pending case. Such opinions would rarely be challenged or become the basis for a supreme court determination on petition for leave to appeal and thus may be welded, undeservedly, into a rigid limiting rule which perpetuates inequity, rather than progress.

Under our present system, it is also impractical to circulate new opinions of the appellate court in such manner as to advise all the members of the court of the existence of such opinion, without slowing down the process of expediting decisions by procedures which would not

be of aid to the Illinois Supreme Court in ascertaining or meeting the issues which require supreme court determination.

The instant case should have been determined on the basis of the value of the *Hansen* case as a precedent under the facts in the instant case. Basically, giving binding effect to the *Hansen* case, under the *stare decisis* conception, serves no purpose other than to saddle the adverse possession concept with a dubious result which may linger too long as a binding precedent. From the language of the majority opinion it is clear that even the majority are "uneasy" about *Hansen* and see it as a dubious precedent. It should not be binding on our court in the instant case.