## MINERVA JANE STALFORD *et al.*

*v.*

## MARY GOLDRING.

*Opinion filed June 19, 1902.*

1. DEEDS—*it is not necessary to prove execution of ancient deed.* A deed which has been a matter of record for fifty-nine years is an ancient deed, and in absence of any evidence of fraud or suspicious circumstances it is not necessary to show proof of execution.

2. SAME—*when certificate of magistracy is unnecessary.* Under the act of 1851, a deed acknowledged, prior to such act, before a justice of the peace in a county other than that where the land lies and recorded in the county where such land is situated is valid, although no certificate of magistracy is attached.

3. EJECTMENT—*effect of affidavit that plaintiff and defendant claim through common source.* If the plaintiff in ejectment makes affidavit that he claims through a common source with the defendant, and no counter-affidavit is filed by the defendant, the plaintiff need not trace title back of such common source.

4. LIMITATIONS—*what not possession under color of title.* Driving out to open prairie land upon an average of twice a year and occasionally picking flowers therefrom are not such acts as amount to possession adverse to the true owner.

5. SAME—*effect of payment of taxes without possession.* If the holder of color of title to vacant land fails to unite possession with such color, the fact that he pays taxes before the true owner takes possession of the land does not give him any rights under section 7 of the Limitation act.

6. SAME—*what necessary to constitute possession.* To constitute possession by the holder of color of title there must be such an appropriation of the land by him as to indicate to the neighborhood that it is appropriated to his exclusive use.

7. SAME—*when entry of holder of color of title is unavailing.* If the holder of paramount title fences in unoccupied land, the fact that the holder of color of title subsequently enters upon a portion of the land and builds a house does not give him any rights under section 7 of the Limitation act.

APPEAL from the Circuit Court of Cook county; the Hon. E. P. VAIL, Judge, presiding.

This is an action of ejectment brought by appellants, against appellee, in the circuit court of Cook county. It

appears that in 1836 John C. Phillips and wife conveyed to Clark Hollenback the west sixty acres of the east half of the south-west quarter of section 4, township 37, north, range 14, east of the third principal meridian, in Cook county, and that appellee is the heir-at-law of Clark Hollenback. Upon the trial there was filed an affidavit of plaintiffs' attorney setting forth that plaintiffs claimed title to the premises through a common source with the defendant, namely through Clark Hollenback, deceased, the ancestor of the plaintiffs. There was no counter-affidavit, or denial under oath by any one on behalf of the defendant, of this affidavit of plaintiffs. Appellants also proved title to the said tract by due course of conveyances from the United States. The defendant relied solely upon section 7 of chapter 83, entitled "Limitations," of the statutes, viz., color of title made in good faith, with payment of all taxes upon the part claimed by her for seven successive years, and to sustain the issues on her part offered in evidence as color of title a deed from James M. Flagg and wife to William J. H. Goldring, dated August, 1868, conveying "lots 43, 44, 45, 46, 47 and 48, in block 4, in Flagg & McBride's subdivision of the east half" of the above sixty acres, which, from the evidence, seemed to cover a tract of ground 125 by 150 feet within the said sixty acres, but no plat was introduced in evidence showing any division or subdivision of the sixty-acre tract, and nothing appears to indicate if there was in fact such a subdivision made, or upon what part of the tract appellee's lots are situated, or the size thereof, or any facts upon which their location might be determined. Appellee also offered in evidence tax receipts and extrinsic evidence to show payment of taxes upon the property claimed by her for more than seven successive years. It was admitted upon the trial that Mary Goldring was the sole devisee under the will of the said W. J. H. Goldring, and that the said will had been duly probated in the probate court of Cook county, Illinois.

It appears from the record that the entire sixty-acre tract of land was an open prairie up to March, 1894, except that on part of it (but the exact part does not appear) there had been fenced in by some person or persons unconnected with either the appellants or the appellee, and whose identity is not disclosed, some five or ten small plats of ground not included in the land claimed by appellee. So far as the evidence discloses, up to March, 1894, neither appellants nor their predecessors in title had or claimed to have possession of any part of the sixty-acre tract, but during the early part of that month appellants erected a fence around the sixty acres in question, which fence remained for but a short space of time, —some of the witnesses putting it a week and others three or four weeks. During this period the fence was torn down several times, and each time appellants again re-placed it. In April of the same year, and about a month after the fence was first erected, W. J. H. Goldring moved or built a house upon the property and took possession of the tract of ground claimed by him. H. E. Long, a representative of appellants, testified that in October, 1895, the following conversation occurred between him and Goldring: "I said to him, 'I represent the heirs of Clark Hollenback, who claim to own this land and had this land fenced some time the forepart of 1894.' He said, 'Yes, there was a fence built there originally clear around this sixty acres, and an officer tore it down about the width of the street on the north side and I moved these two houses in here.' I said, 'Had you ever taken possession of this land that you now claim, before that?' He said, 'No, sir.' 'Did you ever have a house on it before?' He said, 'No, sir.' I then told him, I said, 'We will have to bring suit to get you off of here unless you will get off peaceably, because we claim to own this land, and at my direction the land was fenced.' He then said he would not go off the land. I believe I asked him, before he went away, if he had ever built any fences on the land

as he claimed they were before that, and he said no, he had not; he never had any possession of any part of it."

The only evidence in the record tending to show possession of Goldring prior to April, 1894, was the testimony of his daughter, Mrs. Dean, which was as follows:

Q. "Did your father ever go out prior to the time he moved on this property, and look at it and walk over it, if you know? I mean if you ever were with him?

A. "I have driven out there several times with him as far back as 1876,—centennial year. We walked all over the ground; picked some flowers—purple asters.

Q. "How often did you go out with your father, as near as you can remember?

A. "Sometimes it would average twice a year—twice a summer.

Q. "To the property in question?

A. "To drive out and around it."

So far as the record shows, aside from the few lots fenced in, there were no acts of any one indicating possession over this sixty-acre tract, except by an occasional squatter, and an unauthorized cutting of grass by one of the witnesses, who was a stranger to the title. Nothing appears in the record to indicate that Goldring, or any one for him, ever removed any crop from the premises, but, on the contrary, the evidence is clear that, aside from the few tracts fenced in, the property was used by the public generally.

Upon the trial in the court below the jury returned the following special findings:

Q. "Did the plaintiffs, through their agents, H. E. Long and Wesley Hollenback, fence the land mentioned in the declaration? If so, when?—A. Yes, March, 1894.

Q. "Did the defendants, Goldring *et al.*, after the plaintiffs had caused the land mentioned in the declaration to be fenced, move any building onto the land in question, and if so, when?—A. Did not move on, but built on in April, 1894."

The jury also returned a verdict in favor of the appellants as to the whole sixty acres, except the tract claimed by the defendant, Goldring, and found a verdict in favor of the defendant, Goldring, of not guilty as to the property claimed by her. The court overruled a motion for a new trial and for a judgment *non obstante veredicto,* and a judgment was afterwards rendered in favor of appellee for such part of the tract so claimed by her, from which judgment this appeal was taken.

A. B. MELVILLE, and H. E. LONG, for appellants.

ALTGELD, DARROW & THOMPSON, and FRANCIS S. WILSON, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

At the close of appellee's evidence appellants offered. an instruction and requested the court to direct a verdict in favor of appellants, which was refused. At the request of appellants the court, by appellants' fourteenth instruction, told the jury that if plaintiffs (appellants) fenced or caused to be fenced the land mentioned in the declaration to be fenced, by building a fence around the same, then such act of fencing was actually taking possession of the land. At the request of appellee, and by instruction 8 in her behalf, the court told the jury that "the fact that the plaintiffs built a fence around the entire tract of land will not of itself be conclusive evidence of an actual possession by the plaintiffs, but the jury have a right to take into consideration the length of time the said fence existed, and the acts done by either plaintiffs or defendant after the destruction of said fence, * * * and all the circumstances surrounding the case, in arriving at your verdict as to whether such an act on the part of the plaintiffs was an actual taking possession by them." The refusal to give the peremptory instruction directing a verdict for the plaintiffs, and the con-

tention that instructions 14 and 8 above mentioned are irreconcilable and for that reason reversible error, and that the verdict was contrary to the weight of the evidence, are the principal grounds relied upon by appellants in this case.

Appellee insists that the deed dated July 20, 1836, and recorded March 1, 1837, in the recorder's office in Cook county, Illinois, from Charles McNeil to John C. Phillips, the grantor of Charles Hollenback, was fatally defective, for the reason that the same was acknowledged in La-Salle county and was without a certificate of magistracy; and the deed from John C. Phillips to Clark Hollenback, conveying the same premises, dated September 15, 1836, and recorded March 1, 1837, made and acknowledged before a justice of the peace of LaSalle county, was also without a certificate of magistracy. An affidavit in proper form was made at the trial by appellants that this deed was not in the possession of plaintiffs or of either of their attorneys; that the same is destroyed and not within the power of plaintiffs or their attorneys to produce it, and that the recorder's record of said deed was destroyed by fire on October 8 and 9, 1871. Thereupon appellants introduced in evidence the abstract books of Jones & Sellers, containing extracts or minutes from such destroyed records of said deed. Jones & Sellers, at the time the entries therein were made, were engaged in the business of making abstracts of title for others for hire. Such abstract book, after duly showing the material parts of the deed, contains this memorandum: "Certif. of ackgt. of Jus. Peace, LaSalle county, Illinois; has no certif. of magistracy annexed." We regard the objection of appellee without merit. At the time of the trial the deed had been a matter of record for fifty-nine years, and was therefore an ancient deed, and there being no evidence of fraud or suspicious circumstances connected therewith, it was not necessary to show proof of execution. (*Quinn* v. *Eagleston*, 108 Ill. 248; *Reuter* v. *Stuckart*, 181 id. 529.)

197—11

Nor was it necessary for plaintiffs to trace title anterior to the deed to Hollenback, as plaintiffs, upon the trial, filed an affidavit that they and defendant claimed title through a common source, viz., through Clark Hollenback, the grantee of Phillips, and no counter-affidavit was filed thereto. *Smith* v. *Laatsch*, 114 Ill. 271.

In addition to the above, and settling this matter beyond question, our attention is called to the fact that by an act entitled "An act to amend chapter 24 of the Revised Statutes, entitled conveyances," approved February 15, 1851, (Laws of 1851, p. 122,) it is provided, among other things, that "all deeds, mortgages and other instruments in writing relating to or affecting any lands, tenements or hereditaments situate within this State, which have been executed and acknowledged before any justice of the peace of any county in this State other than the one in which such lands, tenements or hereditaments lie, and which have been recorded in the county where such lands, tenements or hereditaments do actually lie, shall be adjudged and treated by all courts as legally executed and recorded, notwithstanding there is no certificate attached to said mortgage or other instrument by the proper officer that the justice of the peace before whom said deed, mortgage or other instrument was acknowledged was at the time of said acknowledgment an acting justice of the peace of the county in which said deed, mortgage or other instrument purports to have been acknowledged." By said act it is further provided that the record of such deed shall be good and effectual, in law, to charge any purchaser with the existence of such deed so filed for record in the proper office. (1 Adams & Durham's Real Estate Statutes and Decisions, p. 178.) Both of the deeds in question were actually recorded in Cook county in 1837 and were all recorded when the above act was passed, and whatever defect, in the regard complained of, then existed was cured by that act. Appellee's deed was made in 1868, long after this curative act

was passed, and she was bound to take notice of its effect upon the deed of appellants.

Appellants contend for reversal that, they having taken possession under the paramount title before appellee or her husband, William J. H. Goldring, took possession, the title of appellants must be protected as against appellee. The law is well settled that section 7 of the present Limitation act will not become operative and available against the holder of the true title of vacant and unoccupied lands until the payment of taxes thereon for seven successive years has been united with the actual possession of the holder of such color of title. Indeed, this proposition is not denied by appellee, but she insists that there is sufficient evidence in the record to support a finding that Goldring took actual possession of the land claimed by her under his color of title after the payment of taxes for seven successive years and before the entry of appellants. We have carefully examined the record in this case and failed to find any evidence legally tending to prove the taking of possession by Goldring of the premises claimed by him, prior to the time the entire tract was fenced by appellants. There is absolutely no evidence tending to show possession was taken by Goldring prior to April, 1894, except that he drove out to the property on an average of twice a year and in 1876 plucked a flower, but whether from the part claimed by him or from another part of the sixty acres the record does not disclose. These are not such acts of ownership as amount to possession adverse to the true owner. While it is not necessary to constitute possession of wild lands to enclose them with a fence or to erect a house thereon or to reduce such lands to cultivation, yet there must be some act that will apprise persons residing in the neighborhood that some one is in the exclusive control and management of the land, and such acts that will "notify the public that the owner has asserted dominion over the property." (*Hubbard* v. *Kiddo*, 87 Ill. 578;

*Eddy* v. *Gage*, 147 id. 162.)   But the doing of some useless thing,—the mere picking of a flower,—would not amount to actual possession of the land.  (*Brooks* v. *Bruyn*, 24 Ill. 373; *Scott* v. *Bassett*, 186 id. 98.)   To constitute possession in the holder of the color of title there must be such an appropriation of the land by him as to indicate to the neighborhood that it is appropriated to his exclusive use. (*Traverse* v. *McElvain*, 181 Ill. 382.)   In the case last cited, on page 387 we said:  "The possession should be of such open and visible character as to apprise the world that the property has been appropriated and is occupied.   It must also be of such a character as to indicate who the occupant is.  *  *  *  The occupancy must be exclusive. If the possession is only used and enjoyed in common with others or the public in general, it cannot be regarded as hostile to other persons claiming title.   Its character must be such as to arrest attention and put other persons claiming title upon inquiry.   Such possession can not be made out by inference, but only by clear and positive proof."   On page 390: "The cutting of timber on unenclosed wild lands, without anything to define the extent of the alleged claim, is not alone such evidence of ownership as to amount to possession adverse to the true owner."

*Eddy* v. *Gage, supra,* is cited and relied upon by appellee as authority to sustain her position, and counsel for appellee say:  "The facts in our case are so nearly similar to this case that we take it that it will rule in the decision of this case, both upon the facts and the law." While that case properly announced the rules of law applicable to possession, there is no similarity in the facts between that case and the case now under consideration. In that case it appears that the north, east and west lines of the land in controversy were fenced, and that a railroad passed through the south-east corner of the land in a south-westerly direction; that the purchaser, immediately after becoming the owner, had it surveyed and the

lines and corners established; that each and every year
for twenty-one years he cut the grass thereon and made
hay, a part of the time himself and the balance of the
time by others to whom he leased the land for that pur-
pose; that one season he cultivated four acres of the land
in potatoes; that he drove out to the land, from Chicago,
constantly, taking other persons with him, and that his
visits to the land, acts of ownership over it and claim of
title were notorious in the neighborhood, and in summing
up the evidence this court said (p. 168): "Here was a
period of over twenty-one years, from February, 1865, to
March, 1886, that plaintiff was controlling and using the
land, claiming to be the absolute owner under his deed,
and from his acts and conduct in relation to the land
he was the recognized owner by all in the neighborhood
where the land was located." Quoting from *McLean* v.
*Farden*, 61 Ill. 106, we said (p. 170): "It is not necessary
that a party should have his land all enclosed with a
fence before he can be said to be in actual possession.
Any class of improvements or acts of dominion *that indi-
cate to persons residing in the immediate neighborhood who
has the exclusive control of the land* will be deemed to con-
stitute possession." And on page 169: "Possession of
land may be had in different modes,—by enclosure, by
cultivation, by the erection of buildings or other im-
provements, or, in fact, *any use that clearly indicates an
appropriation* to the use of the person claiming to hold
the property." In the case at bar, so far as the records
show, Goldring was never recognized or thought of by
the people in the neighborhood as the owner of the land
claimed by appellants. The evidence is clear that the
land claimed by appellee had never been enclosed or re-
duced to cultivation by Goldring, nor had improvements
of any kind been placed thereon by him, nor was there
any use made by him of this land as clearly indicated,
or by any stretch of the imagination might be deemed to

indicate, an exclusive appropriation by him prior to the fencing of the tract by appellants in March, 1894.

There is, however, one striking similarity in the *Eddy case* with the one under consideration, which has been overlooked by counsel for appellee. On page 166 it is said: "Up to this time [February 27, 1865,] *those holding the title which plaintiff acquired had not, so far as the evidence shows, been in the possession of the land.* DeWolf, [the predecessor in title to Eddy,] who obtained a deed in 1851 and held title some ten years, testified that during this time he never heard of any person claiming title to the land but himself. He visited the land two or three times a year. It was then open prairie, and, as he remembers, he paid all the taxes on the property." Mrs. Goldring, the appellee, relies upon no other acts of Mr. Goldring to show possession than an average of two visits a year by him to the premises, which, as indicated in the *Eddy case,* is not sufficient to constitute possession.

Appellee not having united possession with color of title, a mere payment of taxes before the holder of the paramount title took possession, the bar of the statute never became complete, and after appellants fenced the property and took possession thereof the entry of Goldring thereafter was unauthorized and conferred no rights upon him. Possession must be acquired in a lawful way. (*Gage* v. *Hampton,* 127 Ill. 87.) When Goldring "saw that the property had been reduced to possession by another, by enclosing it with a fence, he had no right to interfere, in any manner whatever, with the possession of the property. His entry was that of a wrongdoer; he was a trespasser." (*Gage* v. *Hampton, supra.*) Appellee not having shown a taking of possession of the land claimed by her while the same was unoccupied, section 7 of the Limitation act constituted no bar to appellants' right of recovery. *Gage* v. *Hampton, supra; Gage* v. *Smith,* 142 Ill. 191; *McCagg* v. *Heacock,* 42 id. 153; *Paullin* v. *Hale,* 40 id. 274; *McCauley* v. *Mahon,* 174 id. 384; *Traverse* v. *McElvain, supra.*

As to the effect of instructions 8 and 14, it will be necessary to review the evidence as it appears by the record. The evidence shows that this sixty acres of land was a wild, prairie, swampy tract; that at times, many years before, small portions, none of which include the portion claimed by appellee, were for a short time enclosed, but in the main the whole tract lay open from the earliest recollection of anybody who testified, to March, 1894, when appellants had the whole sixty acres enclosed by a post-and-wire fence; that the police officers tore some of this fence down and other unauthorized persons tore other portions of it down, and as it was torn down appellants would have it re-built; that this occurred some three or four times, and that finally the entire fence was torn down; that while this tearing-down and building-up process was going on, appellee's donor, after the police officers had torn out a portion of the fence, went into the tract he claimed, which is now claimed by appellee, and built a house upon it. There is no evidence even tending to show that appellants were asserting anything less than a right to the possession to the entire tract and attempting to maintain a fence upon it. The giving, therefore, of appellee's eighth instruction was without anything to support it, and the question of fact as to whether appellants had, by building their fence upon the tract, taken possession, could not have depended upon the length of time their fence stood there, when all the evidence showed that it was removed by unauthorized persons who were acting in hostility to appellants' rights. It may be that there could be circumstances under which the taking of possession of land by merely building a fence around it would not be conclusive evidence of taking possession,—that is, it might appear that the person who built the fence did so at the direction of some stranger to the lawsuit, or for some other purpose than the purpose of evidencing his possession; but there is no evidence in this record at all to warrant

any such inference, and the court should not have given the jury an instruction that permitted it to speculate upon possibilities not arising from the evidence.

The plaintiffs (appellants) laid in their declaration possession and ownership in fee of the west sixty acres of the east half of the south-west quarter of section 4, town 37, range 14, east of the third principal meridian. Defendant (appellee) filed a plea of the general issue and no other plea. Upon the trial, and under the evidence, appellee claimed the fee to lots 43, 44, 45, 46, 47 and 48, in block 4, in Flagg & McBride's subdivision of the east half of the west sixty acres of the east half of the south-west quarter of said section 4. Under the pleadings and the evidence appellee admitted that she was in possession of the entire sixty acres, as she filed no special plea denying possession of any part of the premises or limiting her claim of ownership to any part thereof, as is provided by section 21 of chapter 45 of Hurd's Statutes of 1899. Appellee offered no evidence, except her deed, that the sixty acres in controversy had ever been platted or subdivided by any one. It would seem, under this state of the record, that before appellee could sustain her defense and carve out of this sixty acres of land six lots forming a tract 125 by 150 feet, it would be necessary for her to show that there was such subdivision made by somebody, so that the land claimed by appellee could be separated from the main tract and identified by and as the description given in appellee's deeds, to which her supposed color of title could attach. This defendant wholly failed to do. The fact that the deed to appellee's donor purports, in terms, to convey the property by lot and block numbers, without further proof, could amount to no more than a mere recital or declaration of the maker that the land, or a portion of it, had been subdivided. As between the maker of that deed and those in privity to the title it purported to convey, such recital would operate as an estoppel; but not so as to appel-

lants, who were strangers to that deed and were claiming by a title hostile to it. 20 Am. & Eng. Ency. of Law, (1st ed.) 464; *Miller* v. *Miller*, 63 Iowa, 387.

For the errors indicated, the judgment of the circuit court is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.