Russell LeSourd, Appellant, *vs.* William C. Edwards *et al.* Appellees.

*Opinion filed October 26, 1908.*

1. Limitations—*presumptions are in favor of the holder of the legal title.* Every presumption will be indulged in favor of the holder of the legal title, and as against him no presumption in favor of the holder of color of title will be drawn.

2. Same—*generally any acts of dominion are sufficient to establish possession by party claiming title.* Any acts of dominion exercised over the property by the party who claims title which clearly indicate to others an appropriation of the land to the purposes for which it may be ordinarily used are generally regarded as sufficient to show possession.

3. Same—*what is sufficient possession of submerged land.* The setting out of fish traps about a tract of submerged land and the blazing of the trees to which the traps were attached by ropes are sufficient possession by the holder of the legal title as against the

holder of color of title, even though the ropes to which the traps were attached, and the traps themselves, were beneath the surface of the water, which covered not only the land in question but the surrounding land.

4. Same—*fact that acts of possession are in violation of law is immaterial.* The fact that the placing of fish traps about a tract of submerged land by the holder of the legal title may have been in violation of the fish laws of the State is not material in determining whether actual possession of the land was taken.

Appeal from the Circuit Court of Mason county; the Hon. Guy R. Williams, Judge, presiding.

On June 17, 1907, Russell LeSourd, the appellant, filed his bill in the circuit court of Mason county against William C. Edwards, Richard L. England and others to quiet the title to the north-west quarter of the south-west quarter of section 17, in township 22, north, range 3, west of the third principal meridian, in that county, of which appellant alleged by his bill he was in possession and the owner in fee simple. England answered the bill, denying, among other things, that appellant was the owner of and seized in fee simple of the east fifteen acres of said tract of land. The other defendants were defaulted. A replication to the answer was filed and the cause referred to a master to take the proofs and report the same to the court. The cause was heard by the chancellor upon the evidence reported by the master and the testimony of one witness taken in open court, and on April 20, 1907, the court entered a decree finding, among other things, that appellant was the owner in fee simple of the west twenty-five acres of said tract of land and entitled to the relief prayed for in his bill as to the said twenty-five acres, but as to the east fifteen acres of said tract, which is the land here in dispute, the bill was dismissed for want of equity. From that decree LeSourd has appealed to this court.

It appears from the record that on June 14, 1897, LeSourd purchased the land described in his bill at a tax sale,

and that on July 14, 1899, a tax deed was executed by the county clerk of Mason county conveying said land to appellant. In the year 1898, and thereafter during the months of January and February of each year up to and including the year 1907, the appellant paid the taxes on the said forty-acre tract of land. It also appears from the record that on May 28, 1907, one John H. Nash conveyed to appellee England the said fifteen-acre tract by a quit-claim deed, for a consideration of $150, which deed was recorded in the recorder's office of Mason county on the day of its execution. Tax receipts were offered in evidence by England showing that on February 17, 1906, and on April 17, 1907, Nash also paid the taxes on said forty-acre tract of land. Each of these two payments, however, was made after the payment for the same year had been made by LeSourd.

The evidence discloses that this land is what is known as swamp and overflow land and subject to overflow from the Illinois river and Quiver creek. Since the Sanitary District of Chicago opened its canal, in January, 1900, the whole tract has been under water practically all of the time, and it had been vacant and unoccupied for a period of at least forty years prior to 1907. On June 10, 1907, the land being entirely submerged, appellant ran a single barbed wire about it by attaching the wire to trees or to rails driven fifty or sixty feet apart. When the wire was so attached, appellant placed signs, bearing his name, on the land, in conspicuous places, notifying trespassers to keep off. Prior thereto, however, and on May 28, 1907, England, for the purpose of reducing the fifteen-acre tract to possession, took twenty fish baskets or traps and fastened them with ropes in the water on the land. These ropes were tied to trees, except one, which was tied to a stake, and, together with the baskets to which they were attached, were beneath the surface of the water. England blazed the trees to which the traps were attached when the traps were put in place.

It appears that these baskets were so located at the time appellant put up his wire.

It is insisted by appellant that the court erred in denying the relief prayed for by him in his bill as to the said fifteen-acre tract.

Lyman Lacey, Jr., for appellant.

Lyman Lacey, Sr. & Son, for appellee Richard L. England.

Mr. Justice Scott delivered the opinion of the court:

Appellant, relying upon his tax deed as color of title, claims the fifteen acres in dispute under and by virtue of the provisions of section 8 of chapter 83, Hurd's Revised Statutes of 1905, and under and by virtue of his alleged possession. It is conceded by him that if England, who asserts a legal title, reduced the land to possession in May, 1907, and thereafter continued in possession up to the time when the appellant strung a strand of barbed wire around the land, the decree of the court below should be affirmed. Since January, 1900, the entire tract has been under water practically all the time. Appellant states that "its principal, and probably its only, value now is for hunting and fishing."

The rule is, that every presumption will be made in favor of the holder of the legal title, and as against him no presumption will be drawn in favor of the holder of color of title, only. (*White* v. *Harris,* 206 Ill. 584.) It has frequently been said in reference to acts necessary to constitute possession, that every case must rest upon its own facts, and that it is difficult to state any general rule as to what character of improvements or acts will be sufficient for this purpose, and that the acts necessary to constitute possession depend, to some extent, upon the nature and locality of the property, the use to which it may be applied and the situation of the parties; that a variety of circumstances necessarily have to be taken into consideration in determining

the question. Any acts of dominion exercised over the property by the party claiming to hold title thereto that clearly indicate to others an appropriation thereof to the purposes for which it may ordinarily be used are generally regarded as sufficient. *Morrison* v. *Kelly,* 22 Ill. 609; *Mc-Lean* v. *Farden,* 61 id. 106; *Truesdale* v. *Ford,* 37 id. 210; *Gage* v. *Hampton,* 127 id. 87; *White* v. *Harris, supra.*

We find from the record that appellee England obtained his deed for this tract on May 28, 1907. Immediately thereafter, on the same day, he sent two men with twenty fish traps to take possession of the land. These men went to the land on that day and put the traps out on the land. Nineteen of them were put out by tying them to trees with ropes. The rope in each case was put around a tree below the water and the trap was so weighted that it did not rise to the surface. Each of the trees was then blazed. A stake was then driven in the ground beneath the water, the upper end projecting above the water, and to that stake the twentieth trap was in like manner attached. These traps all continued there in use for fishing purposes until after appellant strung his wire around the land, on the 10th of June, 1907.

It is strenuously insisted on the part of appellant that inasmuch as these traps, and the ropes with which they were attached to the trees, were not visible above the water, England did not, in fact, take possession of the land. As the land was covered with water and grew nothing that seems to have been of any value, it is manifest that the owner could not be expected to assert his rights by the ordinary acts of an owner, such as erecting improvements or taking off the produce of the land. It is true that he might, as appellant did, have carried a wire about the property, the only purpose of which would have been to keep others from passing upon the property,—a thing that would have been of very little moment, in view of the fact that the adjoining lands were also submerged, and that it was

not a matter of substantial importance to the owner of this particular tract whether persons traveling by boat in this vicinity passed over this land or not. It is true that the traps and ropes were not visible after they had been put in position by England's employees, but the acts of those employees in placing them there, and in driving the stake and in blazing the trees, indicate the assertion of such rights as would rest only in the owner. Where the proprietor of an unfenced tract uses it for grazing purposes and herds his stock thereon each year throughout the grazing season, no indicia of possession or ownership is left upon the land by which it·can be determined, after the close of the grazing season, that any person is in actual possession or occupancy of that land, and yet it would scarcely be contended that such land was vacant or unoccupied. It is true that the acts of ownership here relied upon are slight, but in determining the significance thereof the character of the property must be taken into consideration. In view of the fact that this land could be used, at the season at which England placed his traps thereon, only for fishing, we are disposed to think that the acts constituted a visible appropriation thereof for the only purpose for which the land could be used. His men were in open view of passers as they blazed the trees, set out the stake and attached the traps, and having so taken possession of the property it was not necessary that England should keep someone on guard or post notices to advise passers-by that he had taken possession.

Appellant also contends that to fish with the traps put out by appellee England on this land was, at the time they were placed upon the land, a violation of the fish laws of this State. Whether that was so is immaterial in determining whether England actually took possession of the land.

The decree of the circuit court will be affirmed.

*Decree affirmed.*