ELMER KLINGEL *et al.*, Plaintiffs-Appellees, *v.* ORVEL J. KEHRER *et al.*, Defendants-Appellants.

Fifth District   No. 79-284

Opinion filed February 22, 1980.

Pessin, Baird & Wells, of Belleville (Sam S. Pessin, of counsel), for appellants.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellees.

Mme JUSTICE SPOMER delivered the opinion of the court:

In this action to quiet title, the Circuit Court of St. Clair County was called upon to determine the legal ownership of a small tract of unoccupied land on the north bank of the Kaskaskia River. Defendants-appellants Orvel J. Kehrer and Sylvia M. Kehrer have appealed from the trial court's judgment ordering that title to the disputed tract be quieted and vested in plaintiffs-appellees Elmer Klingel and Olga M. Klingel.

The Kehrers contend that the Klingels failed to prove title to the disputed land, and that the action was barred by the statute of limitations and by *laches*. For the first time on appeal, the Kehrers also contend that the owners of the mineral interests reserved in the quitclaim deed by which the Kehrers claim color of title were indispensable parties who should have been joined in this action.

The complaint alleged that the Kehrers had been making claim upon, and interfering with the Klingels' use of, a certain described tract; that the Klingels had title to the tract by reason of warranty deeds recorded in 1953; and that they had paid taxes on, and been in continuous possession of, the tract for more than seven years. In their answer, the Kehrers admitted making claim to the tract in question but denied all the other material allegations of the complaint.

The Klingels' deeds purported to convey to them, along with another tract, the following described real estate:

> "Lot Twelve (12) being part of the Northwest fractional Quarter (¼) of the Southeast fractional Quarter (¼), all in Section Twenty-seven (27), Township One (1), South, Range Six (6) West, as the same are laid out and platted in Assessor's Plat, appearing of record in the Recorder's Office of St. Clair County, Illinois in Book of Plats 'C' on page 129."

The assessor's plat with reference to which the Klingels' land was described was recorded on December 14, 1869. The accompanying sketch reflects the pertinent information shown on the plat. Lot 12, indicated on the sketch by the dark cross-hatching, is bounded on the north by the center section line of section 27 and on all other sides by the Kaskaskia (formerly known as the Okaw) River. All of Lot 1 appears on the other, southerly side of the river. The 1869 plat shows Charles Klingel as the owner of Lot 4, and other persons as owners of Lots 1 and 12.

At the trial to the court sitting without a jury, plaintiff Elmer Klingel, age 74, testified that the land which was the subject of the dispute had been known as Klingel's Bend since he was a little boy. A. S. Klingel, whose name appeared on a plat from the 1930s as the record owner of Lots 12 and 4, was his uncle. The land was deeded to Klingel and his wife by other family members in 1953. He paid taxes on the property for the years 1953 through 1977. His tax receipts showed that Lot 12 contains 15 acres. In August 1972, he purchased an owner's title insurance policy covering the disputed tract. Back in the 1930s, Klingel had made arrangements, on behalf of his father and uncle, to have a sawmill come in and cut timber from Lot 12. Trees were taken within 30 or 40 feet of the river. Five or six years prior to trial, Klingel had contracted to have the pecan trees on the property cut.

East Half of Section 27

Lot 4

River

Lot 1

Center
Section
Line

The only way to reach Lot 12 by land is by a road passing through land owned by the Kehrers and then through Lot 4, owned by the Klingels. Klingel testified that he had traveled over the road for at least 60 years. Lately it has often been covered by water. Since 1953, he has traveled the road a couple of times a year. He mostly goes down to Lot 12 to hunt pecans and hickory nuts for his family's use. He is not a fisherman, and keeps no boats on the land.

Until recently, when the Kehrers had the land surveyed and created a path, there had never been a fence or any other marking between Lots 12 and 4. Klingel had been aware for 20 to 25 years of a quitclaim deed from C. O. Conley and Lydia E. Conley purporting to convey 1.2 acres north of the river to the Kehrers.

At one point during his cross-examination, Klingel's response to a question appeared to indicate that he had seen Kehrer on the disputed tract with tractors and equipment for many years. Subsequently, however, he testified that the only time he ever saw Kehrer there with any equipment was when Kehrer was making a survey of the center section line in 1976. Klingel was last on the southern tip of Lot 12 about a year prior to trial. He had never seen Kehrer nor anybody else take any logs out. He had never seen any tops or stumps indicating where timber had been cut, nor any other indications that Kehrer had cut any timber or done any work on the land.

Carl Ollendorf, age 65, testified on behalf of the Klingels. The nephew of plaintiff Elmer Klingel, he had known defendant Orvel Kehrer for 40 years. He testified that he was familiar with the land in dispute, which had been known as Klingel's Bend, as long as he could remember. He and his father cut timber from Lot 12 in about 1935 for the Klingels. They cut as close as they could get to the river bank, concentrating on the southernmost point. Their equipment consisted of a tractor with a power saw on it, four horses or mules, and two log wagons. Ollendorf could not remember whether the work was all done in one day or was done over a period of weeks or months. He had never heard of C. O. Conley. He had never seen any boats or fishing equipment belonging to Kehrer on the land in question.

The 1975 St. Clair County plat book showed the plaintiffs as owners of all the land north of the river. A 1960 plat showed Lot 12 north of the river and Lot 1 south of the river.

Defendant Orvel Kehrer testified that he was not claiming the greater portion of Lot 12, but only the 1.2 acres immediately north of the river which had been quitclaimed to him and his wife by the Conleys in 1945. That deed purported to convey the following real estate:

"One and Two tenths Acres same being a Part of the North West Francitonal [sic] Quarter (¼) of the South East Fractional

[*sic*] Quarter (¼) of Section Numbered Twenty Seven (27) in Township Numbered One (1) South Range Six (6) West of the 3rd principal meridian, containing in all One and Two tenths acres, lying and being on the north side of the Okaw River, same being designated as lot Numbered one (1) on the assessors plat founr [*sic*] recorded in the Recorders Office, of St Clair County Illinois, on and in Book of Plats 'C' on page 129, All Oil Rights and all mineral Rights being herein reserved to Grantors."

A subsequent deed quitclaimed to the Kehrers all the Conleys' interest in the northwest quarter of the southeast quarter of section 27; it also referred to Lot 1 on the 1869 assessor's plat. The later deed recited that the 1.2 acres previously conveyed lay on the north side of the Okaw River; the deed also purported to convey that part of Lot 1 south of the Okaw River, consisting of 28¾ acres, more or less.

Kehrer testified that he had fished and hunted on the lands just north of the river, and had cut trees there since 1945. He takes some trees out every year, taking a tractor and a saw down there to do it. He has been there about two to five times a year. He takes the trees out that fall in the river. He knew that Klingel had someone up there cutting pecan trees about four years ago, but he stopped them and told them that they were on his land. He had landed there many times with his boat. He had seen no evidence of Klingel's cutting trees on the disputed tract. Over the years, the river has taken 60 to 65 feet of land from the south bank and put it on the north bank of the river. He never took any logs out across the road that goes through Lot 4, but has floated them down the river. He last took a log about two years ago. He usually takes a log or two a year. Kehrer has never built anything on the land. He knew that Ollendorf had cut timber on the property back in the 1930s. He also knew that the property to the north of the river was known as Klingel's Bend.

The trial court found that no part of Lot 1 was north of the river and that all of Lot 12 was north of and wholly contiguous to the north bank of the river; that the purported conveyance from the Conleys to the Kehrers of 1.2 acres of Lot 1 lying north of the river was void; and that Lot 12 encompassed all the land lying in the northwest quarter of the southeast quarter of section 27 to the north of the north bank of the river. The court therefore ordered that title to Lot 12 be quieted and vested in the Klingels.

The Kehrers filed a post-trial motion, seeking leave to amend their answer to allege that the Klingels' action was barred by the statute of limitations and by *laches*. The motion further prayed that the court reconsider and vacate its judgment. The court granted the motion to amend the answer, but denied the motion to reconsider. This appeal followed.

■■ We have concluded that the decision of the trial court should be

affirmed, although our reasons for holding in favor of the plaintiffs appear to differ somewhat from those of the trial court. We find that the plaintiffs proved themselves to be the legal owners of the disputed land by adverse possession and payment of taxes under section 7 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 7). That statute, the purpose of which is to promote the stability of real estate titles (*Wylie v. Fisher* (1929), 337 Ill. 488, 169 N.E. 237), provides in pertinent part as follows:

"Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land, to the extent and according to the purport of his or her paper title." 337 Ill. 488, 490.

■■ There is no question but that the Klingels proved that they had satisfied all the literal requirements of the statute. However, numerous decisions of the supreme court have construed the statute to require further "that the person having color of title made in good faith and thereafter paying the legally assessed taxes for seven successive years must also take possession of the property." (*Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 328, 291 N.E.2d 641, 642-43.) As the court said long ago in *Gage v. Smith* (1892), 142 Ill. 191, 195, 31 N.E. 430:

"Whatever may be the literal import of the words used in the section, yet it is only as a limitation law that it can constitutionally become operative, and statutes of limitation work upon the basis of a possession. When the color of title made in good faith, and the payment of taxes for seven successive years on vacant and unoccupied land, have become united with the actual possession of the holder of such color of title, then, and not until then, the bar of said section of the statute becomes complete, operative and available against the holders of the true title. This has long been the law of this State and a settled rule of property. [Citations.]"

We must therefore determine whether or not the evidence presented was sufficient to prove that the Klingels took possession of the property subsequent to their paying taxes for seven successive years.

Numerous cases have dealt with this question. In *LeSourd v. Edwards* (1908), 236 Ill. 169, 86 N.E. 212, the supreme court stated the general rule, which is that it is difficult to state any general rule:

"It has frequently been said in reference to acts necessary to constitute possession, that every case must rest upon its own facts, and that it is difficult to state any general rule as to what character of improvements or acts will be sufficient for this purpose, and that the acts necessary to constitute possession depend, to some extent, upon the nature and locality of the property, the use to which it

may be applied and the situation of the parties; that a variety of circumstances necessarily have to be taken into consideration in determining the question. Any acts of dominion exercised over the property by the party claiming to hold title thereto that clearly indicate to others an appropriation thereof to the purposes for which it may ordinarily be used are generally regarded as sufficient. [Citations.]" (236 Ill. 169, 172-73.)

In holding that the placement of fish traps on swamp land which was under water most of the time was a sufficient assertion of such rights as would rest only in the owner, even though the traps were not visible after they had been put in position, the court in *LeSourd* stated:

"Where the proprietor of an unfenced tract uses it for grazing purposes and herds his stock thereon each year throughout the grazing season, no indicia of possession or ownership is left upon the land by which it can be determined, after the close of the grazing season, that any person is in actual possession or occupancy of that land, and yet it would scarcely be contended that such land was vacant or unoccupied. It is true that the acts of ownership here relied upon are slight, but in determining the significance thereof the character of the property must be taken into consideration." 236 Ill. 169, 174; see also *Gochenour v. Logsdon* (1940), 375 Ill. 139, 30 N.E.2d 666; *Burns v. Curran* (1918), 282 Ill. 476, 118 N.E. 750; *Augustus v. Lydig* (1933), 353 Ill. 215, 187 N.E. 278.

■■■ The mere payment of taxes and special assessments levied on vacant city lots is clearly not sufficient to show possession. (*Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 291 N.E.2d 641.) Nor is the doing of "some useless thing" such as picking a flower. (*Stalford v. Goldring* (1902), 197 Ill. 156, 64 N.E. 395.) Nor is a mere survey of land sufficient to establish possession. (*White v. Harris* (1903), 206 Ill. 584, 69 N.E. 519.) Whether particular acts are sufficient to constitute possession under the facts of a particular case is a question of fact. (*White v. Harris.*) Proof that land was generally reputed to belong to the ancestor of the adverse claimant is competent as tending to establish notoriety of possession. (1 Ill. L. & Prac. *Adverse Possession* §20 (1953); *Knight v. Knight* (1899), 178 Ill. 553, 53 N.E. 306.) The court in *Stalford v. Goldring* saw as significant that the adverse claimant "was never recognized or thought of by the people in the neighborhood as the owner of the land." 197 Ill. 156, 165.

■■ The boundaries of the land claimed by adverse possession must be proved by clear and unequivocal evidence; this is also a question of fact. (*Patient v. Stief* (1977), 49 Ill. App. 3d 99, 363 N.E.2d 927.) Where it is apparent that the acts of an adverse possessor extend to a river to the

extent that the character of the land permits, the significance of the fact that the river creates a natural boundary cannot be overlooked in determining the claim to the entire tract. *Hunsley v. Valter* (1958), 12 Ill. 2d 608, 147 N.E.2d 356.

■■ Applying the foregoing principles to the case at bar, in light of the nature and locality of the land in question and all the facts in evidence, we think that the plaintiffs sufficiently proved that they had taken possession of the land so as to satisfy the requirements of section 7 of the Limitations Act, and that they were properly adjudged to be the legal owners of all of Lot 12, whose boundaries extend to the river. The Klingels paid taxes on all of Lot 12 for 25 years. All of the evidence tended to show that no part of Lot 1 was north of the river. Subsequent to their paying taxes for seven successive years, they purchased a title insurance policy, cut and removed pecan trees, and gathered pecans and hickory nuts. In addition, the Klingel family had long been reputed to be the owners of the property in question. While none of these facts and circumstances taken alone might be sufficient to show possession, all of them taken together clearly indicate that the Klingels had exerted dominion over the property and appropriated it to their use. The trial court's determination that Lot 12 encompassed all the land in the northwest quarter of the southeast quarter of section 27 to the north of the north bank of the river was clearly supported by the evidence.

The defendants' contention that the plaintiffs' action was barred by the statute of limitations is easily disposed of. Section 1 of the Limitations Act, upon which the defendants rely, provides as follows:

> "No person shall commence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such action or make such entry first accrued, or within twenty years after he or those from, by, or under whom he claims, have been seized or possessed of the premises, except as now or hereafter provided in subsequent sections of this Act." Ill. Rev. Stat. 1975, ch. 83, par. 1.

■■ ■ Although we need not determine precisely when the plaintiffs became the legal owners of the disputed tract, it could not have been earlier than their payment of taxes in 1959, the seventh successive year. Once they had complied with section 7 of the Limitations Act and taken possession of the property, they were entitled to have their title confirmed and to have all clouds on it removed and the title quieted. (*Yeates v. Daily* (1958), 13 Ill. 2d 510, 150 N.E.2d 159; *Scales v. Mitchell* (1950), 406 Ill. 130, 92 N.E.2d 665.) Until they acquired legal title to the land, which could not have been earlier than 1959, they would not have been entitled to sue to quiet their title, because one may not complain of a

cloud on title absent proof of title in himself. (*Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 371 N.E.2d 1003, 1005, and cases cited therein.) This action, filed in 1976, was clearly filed within the statutory period.

■■ Nor can we agree with the defendants' contention that the action was barred by *laches*. As we said in a recent case, *laches* short of the statutory limitation period will bar relief only where granting the relief to which the complainant would otherwise be entitled would be inequitable and unjust and the party pleading *laches* has been prejudiced by the delay. *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 378 N.E.2d 588, 589-90, and cases cited therein; see also *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 291 N.E.2d 641, 643-44.

■■ The delay complained of here appears to be based on Elmer Klingel's acknowledgement that he knew of the deed from the Conleys to the Kehrers 20 to 25 years before trial. However, Klingel also testified that he had never had any indication that Kehrer was exerting any claim to Lot 12 until he saw the survey crew in 1976. It was in 1976 that this action was filed. We cannot see any way in which the defendants were prejudiced by any delay on the part of the plaintiffs in filing this action. In any event, we cannot say that the trial court's determination that the action was not barred by *laches* was a clear abuse of discretion; we will not, therefore, disturb the trial court's decision. *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 768, 378 N.E.2d 588, 590.

Finally, the defendants urge that the court below erred in proceeding to a decision on the merits in the absence of indispensable parties, namely, the unknown owners of the mineral interests reserved in the deed from the Conleys to the Kehrers. It is true, of course, that it is error for a court to proceed to hearing and disposition on the merits of a cause without jurisdiction of necessary parties, and that an order entered without jurisdiction of indispensable parties is null and void. (*Glickauf v. Moss* (1974), 23 Ill. App. 3d 679, 320 N.E.2d 132, 136, and cases cited therein.) To be a necessary party, one must have a present substantial interest in the controverted matter such that the matter could not be resolved without injuriously affecting his rights or leaving the interests of those in fact before the court in an embarrassing or inequitable position. *Keehner v. A. E. Staley Mfg. Co.* (1977), 50 Ill. App. 3d 258, 365 N.E.2d 275, 281, and cases cited therein.

We do not think that the court below was deprived of jurisdiction by the absence of the purported owners of the mineral interests. The issue framed by the pleadings here was whether the Klingels had acquired legal ownership of Lot 12 pursuant to section 7 of the Limitations Act. The proof was sufficient to show that they had. Therefore, they were the legal owners of Lot 12 "to the extent and according to the purport" of their

deed. (Ill. Rev. Stat. 1975, ch. 83, par. 7.) Their deed, and the plat to which it was referenced, and indeed all the evidence before the court, demonstrated that Lot 12 comprised all the land north of the river. Therefore, whatever mineral rights might have been reserved south of the river, in Lot 1, could not have been affected by the decision in this case. Thus the purported owners of the minerals had no substantial interest in this litigation. Even were we to hold that their interest was substantial, this case would clearly fall within the exception to the general rule, sometimes referred to as the "doctrine of representation," which provides that necessary parties need not be joined where a party before the court effectively represents their interest. (*Glickauf v. Moss*; *Cales v. Dressler* (1924), 315 Ill. 142, 146 N.E. 162; *Hale v. Hale* (1893), 146 Ill. 227, 256-61; *Fox Lake Hills Property Owners Association v. Fox Lake Hills, Inc.* (1970), 120 Ill. App. 2d 139, 256 N.E.2d 496.) The Kehrers effectively represented anybody else who might have had an interest in any part of Lot 12.

■■ To summarize, we hold that the plaintiffs proved themselves the legal owners of all of Lot 12 by adverse possession and payment of taxes under section 7 of the Limitations Act; that their quiet-title suit was not barred by the statute of limitations nor by *laches*; and that all necessary parties were before the trial court. Therefore, because the result reached below was correct, we affirm the judgment of the Circuit Court of St. Clair County. The *ratio decidendi* of the trial court is, of course, immaterial; the judgment, not the reasoning, controls. *Rabus v. Calcari* (1959), 16 Ill. 2d 99, 156 N.E.2d 567.

Affirmed.

HARRISON and KARNS, JJ., concur.