HOUSTON OIL CO. OF TEXAS v. GRIFFIN. (No. 6542.)

(Court of Civil Appeals of Texas. Galveston. April 9, 1914. Rehearing Denied April 23, 1914.)

1. ADVERSE POSSESSION (§ 115*)—QUESTION FOR JURY—NOTICE TO FORMER OWNER.

The inclosure and cultivation of a small field of 1 acre on a tract of 160 acres made the question whether such possession and use of the land was sufficient to put the owner upon notice that the person in possession was claiming the 160-acre tract upon which it was actually situated, or any larger portion than that actually inclosed, one for the jury.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

2. INFANTS (§ 24*) — EMANCIPATED MINOR — ADVERSE POSSESSION.

A minor, who, with the consent of his father, claimed and occupied, as his own, land adjoining that of his father, the father at no time asserting any claim thereto, could not be regarded as holding under his father, and hence his minority did not prevent him from acquiring title by limitation, the consent of the father having the effect of emancipating him in so far as the right to acquire the land was concerned.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 25; Dec. Dig. § 24.*]

3. ADVERSE POSSESSION (§ 46*)—CONTINUITY OF POSSESSION—DISABILITY OF OWNER.

Under Rev. St. 1911, art. 5711, providing that, when the law of limitation shall begin to run, it shall continue to run notwithstanding any supervening disability of the party entitled to sue, the appointment of a receiver of the owner of land did not stop the running of limitations in favor of an adverse claimant.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 232–254; Dec. Dig. § 46.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by the Houston Oil Company of Texas against T. J. Griffin. From a judgment for defendant, plaintiff appeals. Affirmed.

See, also, 149 S. W. 567.

Hightower, Orgain & Butler and J. D. Campbell, all of Beaumont, and H. O. Head, of Sherman, for appellant. Singleton & Nall, of Kountze, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title, brought by the appellant against the appellee to recover title and possession of a tract of 220 acres of land, a part of a survey of 1,280 acres of school land patented to Hardin county by the state of Texas by patent No. 541, vol. 41. The defendant disclaimed title to all of said land except a tract of 160 acres described in his answer, as to which he claimed title under the 10-year statute of limitation. By supple-

mental petition plaintiff alleged that from February 1, 1904, to May 5, 1909, the plaintiff corporation was in the hands of receivers appointed by the United States Circuit Court for the Southern District of Texas, and during said time all of the property of plaintiff, including the land in controversy, was in custodia legis and defendant's possession during said time could not avail to perfect title in him by limitation. The trial in the court below with a jury resulted in a verdict and judgment in favor of defendant for the 160 acres claimed by him. This is the second appeal of the case. The opinion of this court on the former appeal is reported in 149 S. W. pages 567–569.

The evidence shows that plaintiff has a regular chain of title to the 220 acres of land from the sovereignty of the soil. In 1894 and 1895, respectively, Ivy M. Griffin, appellee's father, and J. M. Griffin, appellee's uncle, made settlements in the northwest corner of the 1,280-acre tract. The land at that time belonged to the Village Mills Company, and when said company found the Griffins in possession of its land they procured from them the following acknowledgment of tenancy:

"The State of Texas, County of ———:

"Know all men by these presents, that I, Ivy M. Griffin, of the county of Hardin, do hereby acknowledge that I now live on a certain tract of land, situated in said county of Hardin, namely, a survey No. 266 of land originally granted to Hardin county, and which land is situated on the south side of Village creek, and which said tract of land now belongs to the Village Mill Company, and I do hereby acknowledge the ownership of said land to be in said company, and that I hold possession of said land by and with the consent of said Village Mills Company and its tenant at will.

"Witness my hand this 9th day of June, A. D. 1894.

　　　　　　　　　　　　　his
　　　　　　　"Ivy M. X Griffin.
　　　　　　　　　　　　　mark

"State of Texas, County of ———:

"Know all men by these presents, that I, J. M. Griffin, of the county of Hardin, do hereby acknowledge that I now live on a certain tract of land, situated in Hardin county, namely, survey No. 266, originally granted to Hardin county, and which land is situated on the south side of Village creek, and which tract of land now belongs to the Village Mills Company, and I do hereby acknowledge the ownership of said land to be in the Village Mills Company, and that I hold possession of said land by and with the permission of the said Village Mills Company, as their tenant at will.

"Witness my hand this 19th day of June, A. D. 1895.　　　　　　J. M. Griffin.

"Witness: Ivy M. Griffin."

In 1896 Ivy M. Griffin inclosed and put in cultivation about 1 acre of land on the 160-acre tract now claimed by appellee. In December, 1896, the Village Mills Company sold the 1,280-acre survey to Olive Sternenberg & Co. Ivy and J. M. Griffin continued to reside on the tract, and in 1899 Olive Sternenberg & Co., conveyed to Ivy Griffin 100 acres out of the northwest corner of the 1,280-acre survey. This 100 acres included the improvements and all of the land on the tract theretofore occupied by Ivy and J. M. Griffin, except the 1-acre field, before mentioned, which was situated about 150 yards east of the east line of the 100-acre tract. Appellee was then about 19 years old, was living with his father, and continued to live with him until after this suit was brought. After Ivy Griffin bought the 100-acre tract, he ceased to cultivate the 1-acre field; but appellee, with the consent of his father, took possession of said field, continued to cultivate it, and began to claim 160 acres of land lying east and south of his father's 100-acre tract. His claim to said 160 acres was continuous and notorious for more than 10 years before this suit was filed. He cultivated the 1-acre field every year for five years, and then opened another field of 2½ acres on said 160-acre tract, which he continued to cultivate up to the time of the trial. When he opened the 2½-acre field he abandoned the 1-acre field and used the fence thereon in inclosing the new field. His occupancy and use of the land by the cultivation of the two small fields, above mentioned, continued for more than 10 years before the institution of this suit. The 2½-acre field was some distance south and west of the 1-acre field, and its northwest corner was within 20 or 30 feet of his father's fence on the south line of the 100-acre tract; but it was inclosed separate and apart from the inclosure on his father's land. After Ivy Griffin purchased the 100-acre tract, his brother, J. M. Griffin, who was unmarried, moved into the same house with him, and has lived with him ever since.

It is not shown that either Ivy or J. M. Griffin have ever used, occupied, or made any claim to any part of the land, except the 100-acre tract, since the purchase of said tract by Ivy. Appellee testified that he knew the location of the north and east lines of the 1,280-acre survey, and the east and south lines of his father's 100-acre tract, and that the 160 acres claimed by him was in an L shape and lay south and east of his father's tract. The land described in appellee's answer, and designated on the plat contained in the statement of facts as the 160 acres claimed by appellee, begins at the northeast corner of the Ivy Griffin 100-acre tract on the north line of the 1,280-acre survey; thence with said north line to the northeast corner of said survey; thence with the east line of said survey to a point thereon, from which a line runs west to the west line of the survey; and thence north with said west line to the southwest corner of the 100-acre tract, east with the south line of said tract to its

southeast corner, and north with the east line of said tract to the place of beginning, containing 160 acres.

On March 17, 1904, receivers were appointed for the appellant Houston Oil Company by the United States Circuit Court for the Southern District of Texas, and all of the property of said company was, by the order of said court appointing the receivers, divested out of appellant company and vested in the receivers appointed by the court. This receivership continued and the property of the company remained vested in the receivers until April 15, 1909, when the court in which said proceedings were pending directed the receivers to deliver to the appellant company the property of the company theretofore placed in their hands by the order of court before mentioned. This suit was filed August 20, 1910. Most of the questions presented by this appeal were raised on the former appeal and decided adversely to appellant's contention.

[1] Appellant, under appropriate assignments of error, contends, as it did upon the former appeal, that the trial court should have instructed the jury to return a verdict in its favor on the ground that the evidence is insufficient to raise the issue of the adverse possession of appellee of the 160 acres of land claimed by him for 10 years prior to the institution of this suit. This contention is based upon the proposition that the cultivation and use by appellee of the small field of one acre on the land in controversy during his minority and while he was living with his father was not a sufficient actual and visible appropriation of the land to put the owner upon notice of appellee's claim to said 160 acres. As said in our former opinion, it cannot be held as a matter of law that the inclosure and cultivation of a field of one acre on a large tract of land is not sufficient possession and use to put the owner of the land upon notice that the person so using and occupying his land is claiming some right or title thereto. The case is not one of encroachment. From the distance the 1-acre field was located from the land owned by appellee's father where appellee lived with his father, the owner of the land on which the field was situated could not reasonably have supposed that said field was placed on his land by mistake on the part of his neighbor as to the location of his lines, and the rule announced in Bracken v. Jones, 63 Tex. 184, Titel v. Garland, 99 Tex. 201, 87 S. W. 1152, and Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann Cas. 1913a, 559, does not apply.

[2] On the question of the effect of the minority of appellee upon his right to acquire the land for himself by his adverse claim, occupancy, use, and cultivation thereof for the time prescribed by the statute, we adhere to our holding on the former appeal. The evidence shows that appellee's claim and occupancy of the land as his own was with the consent of his father, who at no time asserted any claim to the land. In these circumstances appellee cannot be regarded as holding possession for or under his father, and we cannot believe that his minority affects the adverse character of his claim and possession. The consent of the father to the acquisition by appellee of the land for himself by occupying and cultivating it had the effect of emancipating appellee in so far as his right to acquire the land was concerned. The fact that the father, Ivy Griffin, prior to the sale of the land by the Village Mills Company, held possession as tenant at will of said company would not, after the abandonment of the field by him, he having in the meantime purchased a portion of the survey from the vendees of the Village Mills Company, affect the subsequent adverse possession of appellee. There in nothing in the evidence tending to show that Ivy Griffin ever agreed to hold the land for the vendees of the Village Mills Company, or that they ever supposed that he was occupying any portion of the land as their tenant.

[3] The appointment of receivers for appellant company did not have the effect of stopping the running of the statute of limitation in appellee's favor. Appellee's adverse possession and claim began prior to the appointment of the receivers, and the inability or disability of appellant to bring suit for the recovery of the land pending the receivership would not stop the running of the statute. Revised Statutes, art. 5711. The receivers were expressly authorized by the order of the court by which they were appointed to sue and recover "all of the moneys, property, and assets of the company, and to that end are authorized to institute and prosecute all suits that may be necessary for the protection and preservation of, or in reducing to possession, the property rights and assets of said company." We know of no rule which would protect the appellant from the result of the failure of the receivers of the company to exercise the power conferred upon them to bring suit to recover possession of this property.

We have not deemed it necessary to discuss each of appellant's assignments of error in detail. What has been said disposes of all the material questions presented by the appeal. We have considered all of the assignments presented, and none of them, in our opinion, should be sustained. It follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.