HARRY D. DEATHERAGE, Plaintiff-Appellant, v. RUSSELL LEWIS *et al.*, Defendants-Appellees.

Fifth District    No. 81—565

Opinion filed March 1, 1985.

James F. Thebeau, Jr., of Granite City, for appellant.

Irvin Slate, Jr., of Granite City, for appellees Russell Lewis and Estella Lewis.

PRESIDING JUSTICE JONES delivered the opinion of the court:

At issue in the instant case is whether the plaintiff's possession of property with his father during the plaintiff's minority was sufficient to show his acquisition of the property by adverse possession. We find that it was not and accordingly affirm the judgment of the trial court.

The property that is the subject of this suit consists of a strip of ground 27 feet in width and approximately 600 feet in length. The parties described the property as a "ditch" lying approximately eight to 10 feet below the property north and south of it. The disputed strip runs east and west along the southern border of property belonging to the various defendants and lies north of a farm once owned by the plaintiff's father and then by his mother. The plaintiff's father's farm was separated from the disputed property by a strip of ground 75 feet in width. The plaintiff purchased this latter strip in 1967 but owned no other property in the area.

While the record is unclear as to the ownership of the disputed property at times relevant to this action, it appears that the property was acquired by Howard Robertson at an undisclosed date from the East Side Levee District. Robertson had also purchased the property immediately north of the disputed strip in 1968 from Ervin Schaeffer. Robertson had sold the 75-foot strip south of the disputed property to the plaintiff and, in 1977, had sold both the disputed strip and the property north of it to Russell Lewis. This property was subsequently developed by defendant Eastlands, Inc., and sold as lots to the individual defendants whose lots contained a portion of the disputed property.

At a hearing on the plaintiff's amended complaint to quiet title to the disputed property, the plaintiff testified that he had moved with his parents to his father's farm in 1937. At that time there was a fence along the north edge of the disputed property consisting of three or four feet of hog wire plus a strand of barbed wire. The plaintiff stated that the fence had not been maintained since the early fifties and that he had taken down a substantial part of the fence about 20 years earlier (around 1960). The plaintiff at another point stated that the fence had not come down until after the property had been surveyed in 1969.

The plaintiff asserted that he had "constructively farmed" the property in question since 1939, when he was eight years old. More specifically, he stated that the property had been farmed by his father

"who kept hogs and cows and had hog houses." After the fifties the property had been used only to store equipment and scrap lumber and to dump trash. This use had been intermittent, and the storage and dumping had occurred primarily near the Deatherage residence. The plaintiff had not maintained the fence since the early fifties because "there was no livestock." The plaintiff stated further that he had occasionally hunted and cut firewood on the disputed strip and that he had had a garden there about six years earlier.

Gus Smolar, a friend of the plaintiff's for about 35 years, testified that he had seen the fence line on the disputed strip in 1944 or 1945 when it was "good and tight." He had first noticed some deterioration of the fence between 1959 and 1964, and the fence had now been knocked down in places. Gus Smolar stated that he had observed pasturing in the ditch and that he had at one time had a tar vat in the ditch that he had used to treat fish nets. He had also seen some lumber stored there from time to time for intervals of 30 days to four or five months.

Howard T. Robertson, the previous owner of the disputed property, testified that he had lived near the property since 1945 and could see it from his home. He had been aware of the fence on the property and had known of the use of the property by the plaintiff's father. Robertson had had no objection to this use because he had been a good friend of the plaintiff's father. Robertson stated that he and the plaintiff's parents and Ervin Schaeffer, from whom he had acquired the property north of the disputed strip, had been "neighbors and good friends." Robertson stated, however, that he did not get along well with the plaintiff.

Robertson testified that by 1952 the fence on the disputed property had remained only in part. There was no work done on it after 1954, and it was no longer in existence after 1959. Robertson stated that sheep had been grazed on the disputed parcel one spring in 1948 or 1949, but he could not remember any cows being kept there. According to Robertson, the plaintiff had farmed since about 1948 or 1949.

Robertson stated further that in 1969, after he had sold the 75-foot strip of ground to the plaintiff, the plaintiff had tried to make a trade with Robertson for the disputed property. The plaintiff challenged this testimony by offering into evidence a letter he had written to Robertson's attorney in 1969 concerning the possibility of acquiring property owned by Robertson north of the fence line.

Defendant Russell Lewis, who had purchased the disputed property from Robertson, testified that the plaintiff had approached him

in early 1977, before he (Lewis) had actually acquired a deed to the property, to propose a trade of other property for the disputed strip. Lewis could not make such a trade because his loan documents had been prepared and he was afraid that his financing would be delayed by a change in the legal description.

Howard W. Robertson, son of Howard T. Robertson, testified that he had lived with his parents near the disputed property until 1955 and knew the plaintiff well. He stated that the last time the property had been used for pasturing was in the fifties. The plaintiff's parents had kept milk cows there, but the plaintiff did not have any cows on the property. Robertson stated that he had never seen the plaintiff work on the fence and that, after the pasturing had stopped, the plaintiff had used the disputed strip intermittently to dump trash and store scrap. Most of the dumping had been south of the disputed property, however, and there had been no farm implements stored there during the last 10 years.

Following the hearing the trial court entered judgment for the defendants and against the plaintiff on his claim of ownership by adverse possession. In an extensive memorandum of judgment, the court noted that the plaintiff claimed to have commenced the period of adverse possession in 1939 when he was eight yeas old and to have continued such possession until 1959 when title was perfected. The court continued:

> "The law is very clear on the question of one obtaining title by adverse possession against a minor. One cannot obtain title in that manner during the infancy of a minor owning land. It would seem to this writer that the converse should also be true—that an infant cannot obtain title by adverse possession due to the legal disability of infancy."

The court added that it doubted whether an 8-, 9-, 10-, 11- or 12-year-old child "could form any intent to actually possess real estate in an adverse, hostile and open manner." Since, in the instant case, the plaintiff's legal disability of infancy would have lasted until the year 1952, the court ruled that

> "adverse possession, if any, in this cause could not have commenced prior to January 1, 1952. Plaintiff would have to have had actual, visible, hostile, notorious and exclusive, continuous and exclusive [sic] possession under a claim of ownership until at least January 1, 1972. Plaintiff's evidence does not support his claim of adverse possession."

On appeal from this judgment, the plaintiff contends that the court erred in holding that he could not obtain ownership by adverse

possession based upon his possession of the disputed property during his minority. The plaintiff asserts that his acts of ownership, including maintenance of the fence and use of the property by his father and him for farming, storage and dumping purposes, established the elements of adverse possession. The plaintiff further asserts that he is entitled to "tack" onto his father's possession of the disputed property if necessary to meet the required time period and that, in any event, there was sufficient evidence of his possession of the disputed property for 20 years after he had attained his majority to sustain his claim of ownership by adverse possession.

■ We note preliminarily that we are aware of no Illinois case that addresses the issue of whether a minor can obtain ownership of property by adverse possession. While the limitations statute pertaining to recovery of lands (Ill. Rev. Stat. 1983, ch. 110, par. 13—101 *et seq.*, formerly Ill. Rev. Stat. 1979, ch. 83, par. 1 *et seq.*) contains an exception as to the running of the statute against a minor (Ill. Rev. Stat. 1983, ch. 110, par. 13—112, formerly Ill. Rev. Stat. 1979, ch. 83, par. 9), it is silent regarding the minority of one seeking to obtain title by adverse possession. The law is well settled, however, that title to property may be established by 20 years' possession that is (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious and exclusive, and (5) under claim of title inconsistent with that of the true owner. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 421 N.E.2d 170; *Martin v. My Farm, Inc.* (1983), 111 Ill. App. 3d 1097, 445 N.E.2d 44.) Thus, unless such possession is affected by the minor's legal disability of infancy, it would appear that a minor could obtain title by adverse possession as well as another who had established the requisite elements.

■ The legal disability of infancy, under which a minor may, among other things, avoid contracts made during his minority, is really a privilege that the law gives to be exercised for the minor's benefit (43 C.J.S. *Infants* sec. 108, at 370-71 (1978)), the object being to protect minors from the inexperience and improvidence of youth (*Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 368 N.E.2d 702; *Fuller v. Pool* (1930), 258 Ill. App. 513). The limits on the legal capacity of minors to act on their own behalf were not established, however, to defeat enforcement of their rights, and, although infancy protects a party from the consequences of many of his acts, no one else may take advantage of that infancy. (See 43 C.J.S. *Infants* sec. 108, at 371 (1978); *Ballard v. Buist* (1959), 8 Utah 2d 308, 333 P.2d 1071.) Thus, while a minor may avoid certain obligations entered into during his minority, those with whom he deals are liable as though he

were an adult and cannot set up his disability as a defense. *Cf. Field v. Herrick* (1881), 101 Ill. 110 (adult lessor cannot defeat lease or be relieved of its obligation by reason of infant lessee's disability); see generally Wood, *Validity of Transactions with Minors and Incompetents*, 1951 U. Ill. L. F. 212 (hereinafter Wood, *Transactions with Minors*).

■ Notwithstanding the protection afforded a minor by the legal disability of infancy, he is not precluded thereby from acquiring and owning real property, and he may obtain and dispose of such property in the same manner as an adult, subject, of course, to the minor's right of avoidance. (Wood, *Transactions with Minors*, at 215-16; 43 C.J.S. *Infants* secs. 126-145 (1978); 27 Ill. L. & Prac. *Minors* secs. 31-34 (1956).) Since the minor's legal disability, by its nature and purpose, does not affect his capacity otherwise to enjoy and exercise real property rights, it follows that his minority would not affect the adverse character of his possession of real property and that a minor could, therefore, acquire title by adverse possession in the same manner as an adult. See Wood, *Transactions with Minors*, at 216; 2 C.J.S. *Adverse Possession* sec. 21, at 672 (1972).

While authority regarding the adverse possession of property by a minor is scant and of an early vintage, courts in other jurisdictions have similarly held that a minor is not foreclosed from acquiring property by adverse possession where the required elements have been properly established. In *R.W. Wier Lumber Co. v. Conn* (Tex. Civ. App. 1913), 156 S.W. 276, the court held that possession of land by two sons, one of whom was a minor, was sufficient to vest them with title by adverse possession, even though both sons were then living with their father on other property. The court noted in this regard that "[the minor son's] right to acquire this tract was recognized by his father." (56 S.W. 276, 279.) In another case, *Houston Oil Co. v. Griffin* (Tex. Civ. App. 1914), 166 S.W. 902, the minor defendant claimed title by adverse possession of property occupied "as his own *** with the consent of his father, who at no time asserted any claim to the land." (166 S.W. 902, 904.) The court stated that, under these circumstances, the minor "[could] not be regarded as holding possession for or under his father, and we cannot believe that his minority affect[ed] the adverse character of his claim and possession." (166 S.W. 902, 904.) The court continued:

> "The consent of the father to the acquisition by [the minor son] of the land for himself by occupying and cultivating it had the effect of emancipating [the minor son] in so far as his right to acquire the land was concerned." (166 S.W. 902, 904.)

(See also *Petty v. Griffin* (Tex. Civ. App. 1922), 241 S.W. 252.) Further cases to this effect are *Woodruff v. Roysden* (1900), 105 Tenn. 491, 58 S.W. 1066, where the minor defendant, who had occupied property with his father under claim of title for seven years, was held· to have acquired title by adverse possession even though he was a minor, and *Riley v. Jameson* (1823), 3 N.H. 23, where the defendant, who had entered upon land when he was a minor 14 years of age, was presumed to have taken possession of the property in his own right despite the fact that he was living at the time in his mother's family.

▄▄ ▊ Because of our conclusion that a minor can acquire title by adverse possession in the same manner as an adult, we believe that the trial court erred in holding as a matter of law that the plaintiff could not obtain title to the instant property by adverse possession during his minority. From a consideration of the record on appeal, however, we find that the plaintiff here failed to show sufficient facts to establish his possession of the disputed property for the required amount of time. The plaintiff's claim of adverse possession from 1939 until the 1950's rested upon his father's use of the property for keeping hogs and cattle. Unlike in *Houston Oil Co. v. Griffin* and *R.W. Wier Lumber Co. v. Conn*, where the cultivation and use by the minor claimants of the property in question was separate from any claim to or use of the property by their fathers, there was no showing here that the plaintiff exercised any acts of ownership over the property on his own behalf. Moreover, while the plaintiff's claim of ownership by adverse possession could not depend upon his father's possession of the disputed property, there was evidence that even his father's use was by permission and acquiescence of the owner.

The plaintiff's other alleged acts of dominion over the disputed property "after the fifties"—storing equipment and scrap lumber and dumping trash—were, by the plaintiff's own testimony, "intermittent," and the dumping and storage occurred "primarily near the Deatherage residence," which was separated from the disputed property by the 75-foot strip of ground. Thus, evidence of the plaintiff's own use of the property was indefinite and failed to show unequivocal acts of ownership necessary to a claim of adverse possession. (See 1 Ill. L. & Prac. *Adverse Possession* sec. 13 (1953).) Further, while the plaintiff relies upon *Patient v. Stief* (1977), 49 Ill. App. 3d 99, 363 N.E.2d 927, and *Ewald v. Horenberger* (1976), 37 Ill. App. 3d 348, 345 N.E.2d 524, to assert that the fence along the north edge of the disputed property constituted notice of his occupancy for purposes of adverse possession, those cases are distinguishable in that both involved a fence as boundary line between two adjoining landowners. In

the instant case the plaintiff owned no property on either side of the fence before 1967, and the fence, therefore, could not be said to have provided notice of the plaintiff's occupancy of the disputed strip extending to the fence. Indeed, it is significant that, while possession of the disputed property extending from his father's land over to the fence would necessarily have included the 75-foot strip lying between the two, the plaintiff did not claim to have acquired the 75-foot strip by adverse possession but, rather, purchased it from Robertson in 1967, thereby forfeiting any claim of adverse possession to the 75-foot strip and, by implication, to the disputed strip as well.

Finding, then, that there was insufficient evidence to sustain the plaintiff's claim of adverse possession of the disputed property during his minority, we likewise reject his further contention that he could establish the requisite period of possession by "tacking" his own possession to that of his father's. There was, in the first place, no evidence that the plaintiff's father ever claimed possession of the disputed property adversely to the owner, and, since the plaintiff's father conveyed no property to him, there was, additionally, no privity or connection in succession between the plaintiff and his father necessary to establish the continuous possession required for adverse possession. (1 Ill. L. & Prac. *Adverse Possession* sec. 88 (1953).) As to the plaintiff's final contention that there was sufficient evidence, in any event, of his possession for 20 years after he had attained his majority to sustain his claim of adverse possession, the trial court specifically found to the contrary, and we see no basis upon which to overturn that finding.

For the reasons expressed in this opinion, we hereby affirm the trial court's judgment that the plaintiff failed to acquire the disputed property by adverse possession.

Affirmed.

WELCH and KARNS, JJ., concur.